PAINE WEBBER JACKSON & CURTIS, INC. *v.*
GEOFFREY J. WINTERS
(5025)

DUPONT, C. J., BIELUCH and NORCOTT, Js.

Argued October 7, 1987—decision released March 29, 1988

*John H. Chapman,* with whom, on the brief, were *Brian E. Moran* and *David Crystal II,* for the appellant (defendant).

*Alan R. Spirer,* with whom was *Jan A. Marcus,* for the appellee (plaintiff).

BIELUCH, J. The plaintiff, Paine Webber Jackson & Curtis, Inc. (PWJC), a stock brokerage firm, brought this action in three counts against the defendant, a stockbroker formerly in its employ. The trial court rendered partial summary judgment for the plaintiff on the first two counts, from which the defendant has appealed. We find error.

The defendant originally was a stockbroker with Lehman Brothers Kohn Loeb (Lehman). On or about October 14, 1982, the defendant left Lehman to work for the plaintiff. Upon the commencement of this employment, the plaintiff gave the defendant $260,000 secured by an "advance compensation agreement" in the form of a promissory note executed on September 30, 1982. The further sum of $40,000 was turned over to the defendant on March 31, 1983, secured in the same manner and on the same terms.

The two promissory notes were identical in form and contained these relevant provisions: The principal amounts were due five years from date without interest. If the defendant's employment was terminated voluntarily by him, or by the plaintiff for wilful misconduct, "or if at any time, in the sole opinion of PWJC, the financial responsibility of the Employee has become impaired, such impairment to include, without limiting the generality of the foregoing . . . the entry of judgment or issuance of an order of attachment or gar-

nishment; or the commencement of any proceeding or procedure for enforcement of a money judgment, then PWJC, at its option, may declare this Note immediately due and payable, without notice or demand." Counsel fees and costs incurred in the enforcement of the note were to be paid by the employee.

Each note provided for the forgiveness by PWJC of 25 percent of the principal amount on the second anniversary of the note, and 25 percent annually thereafter, effectively cancelling the note after five years. Forgiveness of the whole or any remaining principal balance of the note was conditional on the following: (1) the defendant's employment not being terminated either voluntarily or by PWJC for wilful misconduct; (2) the defendant's payment of all applicable taxes; and (3) the fact that payment of the note had "not been declared by PWJC to be due and payable pursuant to its option to accelerate."

On or about March 23, 1984, the plaintiff terminated the defendant's employment. Preliminary to bringing this action to collect on its notes, the plaintiff, on September 14, 1984, obtained an ex parte order of attachment against the defendant's real estate in the amount of $325,000 to secure any judgment rendered.

The plaintiff's complaint was in three counts. In the first count, the plaintiff sought to recover the principal amount of $260,000 plus interest, attorney's fees and costs on the note of September 30, 1982. The plaintiff alleged that it exercised its option to declare the note immediately due and payable, without notice and demand, in accordance with its terms for two reasons. First, the plaintiff terminated the defendant's employment in March, 1984, for wilful misconduct. Second, the defendant's financial responsibility became impaired by reason of a judgment in favor of the Bankers Trust Company on July 5, 1984, secured by

a real estate attachment and judgment lien. The second count made the same allegations and sought to collect on the note of March 31, 1983, for $40,000. The third count was for recovery of the combined amounts on a theory of unjust enrichment after the defendant's termination of employment for wilful misconduct.

In his answer to the complaint, the defendant admitted the execution of the two promissory notes and the judgment against him with its supporting liens, but denied that he owed the amounts claimed in the notes. By way of special defense to the first and second counts, the defendant alleged that the notes were not yet due. The defendant also filed seven counterclaims seeking the following: (1) damages for breach of employment contract; (2) an accounting; (3) punitive damages for false and fraudulent promises and representations; (4) damages for unjust enrichment; (5) damages for conversion; (6) damages for defamatory statements; and (7) damages for causing a libelous and defamatory publication.

The plaintiff thereafter moved for partial summary judgment only on the first and second counts of its complaint. The supporting affidavit was filed by Robert J. Hume III, vice president of PWJC, and set forth the plaintiff's sole claim for summary judgment. After reciting the execution and terms of the notes, the affidavit stated that the impairment of the defendant's financial responsibility by the judgment for the Bankers Trust Company against him on July 5, 1984, secured by the attachment and judgment liens, "triggered PWJC's right to declare the notes immediately due and payable," which it elected to exercise. Although the plaintiff relied upon the alleged impairment of the defendant's financial responsibility, the extent of such impairment, namely, the amount of the Bankers Trust Company judgment against the defendant, was not

recited in the plaintiff's complaint or stated in its supporting affidavit to the court.

The defendant filed two affidavits in opposition to the motion for partial summary judgment. Both of these affidavits were very detailed and comprehensive in their statements. The first affidavit, that of the defendant's attorney, recited the following: The "promissory notes," although denominated as such, were considered by the parties to be advance compensation agreements structured for payment of an upfront bonus of $300,000 to the defendant for becoming an employee of PWJC; an attached excerpt of the deposition of Robert J. Hume III, vice president of PWJC, confirmed that these documents were known as advance compensation agreements; the provision for no interest and the clause for progressive forgiveness annually after two years and in the total amount after five years show that the parties did not contemplate reimbursement, except in the event of the defendant's termination of employment voluntarily or for wilful misconduct, or for his fiscal irresponsibility, within that period; and any reimbursement due decreased progressively after two years of employment until the debt was completely erased after five years.

The affidavit of defendant's counsel stated further: The plaintiff was motivated "after its hasty illconsidered firing of [the defendant] . . . to attempt to recoup its losses through an acceleration of the [advance compensation agreements]"; PWJC also sought professional complaints against the defendant from some of his customers; the plaintiff was unaware of the Bankers Trust judgment at the time it terminated the defendant's employment for alleged wilful misconduct; in preparing to enforce the advance compensation agreements for the alleged wilful misconduct, a property search by PWJC's Connecticut counsel disclosed the recent judgment rendered in the trial court;

this judgment originated in the New York County Civil Court in the amount of $8707.88, and was rendered on June 27, 1983, on the defendant's default in appearance; suit to recover this judgment was brought in the Superior Court for the judicial district of Fairfield at Bridgeport; default judgment against the defendant was rendered in that action in April 1984, one month after the defendant had been terminated by the plaintiff for alleged wilful misconduct; these default judgments first came to the defendant's attention when he was served with the order of attachment and writ, summons and complaint in this action; the underlying judgment in New York was mistakenly rendered for a debt previously paid by a Lehman check, which the defendant was trying to locate; and finally, the good faith of the plaintiff in choosing to accelerate the advance compensation agreements is a factual determination.

The second affidavit, that of the defendant, recited the circumstances surrounding the execution and delivery of the advance compensation agreements and the relationship between the parties in support of his claim that questions of fact exist as to the validity and good faith of the alleged acceleration of the advance compensation agreements. The detailed statements need not be recited. Their previous inclusion in counsel's affidavit is sufficient here.

The motion for partial summary judgment was granted by the court. In its memorandum of decision, the court, after acknowledging the claim of the defendant in its documentary proof that "[t]he judgment that triggered the acceleration was so small as to raise a question of good faith on the part of the plaintiff," distilled the affidavits of the defendant and his counsel to this statement: "In reducing the arguments of the defendant to a nutshell, it is found that the real claim is that the plaintiff did not act in good faith in accelerating the notes. Such lack of good faith is claimed to

be an issue of fact." The trial court recognized that this "concept" of good faith has been codified in General Statutes § 42a-1-208.[1] Quoting Practice Book § 164,[2] the court concluded, however, that "whether the plaintiff acted in good faith is a question of fact, but not a 'genuine issue' because it has not been pleaded."

The court took judicial notice of the file in Docket No. CV-84-0216361, Superior Court for the judicial district of Fairfield, *Bankers Trust Co.* v. *Winters,* and found that the facts stated in the supporting affidavit as to the attachment and judgment lien were not controverted. It therefore concluded that these facts warranted the exercise by the plaintiff of its right to declare the notes due and payable even though the notes were not negotiable.

The trial court also held that the defendant is indebted to the plaintiff in the principal amount of the notes "notwithstanding that there exists a genuine issue of fact in paragraph 5 of each count, i.e., as to the matters of wilful misconduct."

After finding the issues for the plaintiff on the first and second counts as to liability only, the court ordered a further hearing on the plaintiff's claims for interest and counsel fees and to determine the amount of the judgment. After hearing the parties on these claims,

[1] General Statutes § 42a-1-208 of the Uniform Commercial Code provides: "A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."

[2] Practice Book § 164 provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged."

the court rendered judgment for the plaintiff in the amount of $319,539, consisting of the principal amounts of the notes and counsel fees of $19,539, plus taxable costs. Interest was not payable under the notes. The plaintiff, however, claimed interest under General Statutes § 52-192a,[3] even though no *trial* of the issues took place. The court computed interest, pursuant to § 52-192a, from the filing of the complaint to judgment

[3] "[General Statutes] Sec. 52-192a. OFFER OF JUDGMENT BY PLAINTIFF. ACCEPTANCE BY DEFENDANT. COMPUTATION OF INTEREST. (a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment,' the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment.' Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) *After trial* the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action." (Emphasis added.)

on March 12, 1986, to be $52,260.12, and awarded that amount to the plaintiff for a total judgment on its complaint of $371,799.12. The defendant has appealed from this interlocutory judgment on the first and second counts of the plaintiff's complaint.

The defendant's first claim is that the court erred in granting summary judgment where it explicitly found that there was a triable issue of fact as to the plaintiff's good faith in accelerating the advance compensation agreements on the basis that bad faith had to be specially alleged. Our ruling on this claim is dispositive of the defendant's appeal.

The trial court's reasoning was simply stated: Whether the plaintiff acted in good faith in accelerating payment of its notes is a question of fact. The court cited statutory authority for this conclusion in its statement: "This concept has been codified in Connecticut. See Sec. 42a-1-208, Conn. General Statutes." To this extent the trial court was correct, but it erred when it concluded: "However, the court cannot consider this as a genuine issue of fact because the defendant has not pleaded the lack of good faith."

Summary judgment is a strictly measured remedy and is to be used with great caution and clear acknowledgment only when warranted by law. Since litigants ordinarily have a right to have a trial upon issues of fact, the moving party for summary judgment is held to a strict standard. The party seeking summary judgment must show the nonexistence of any genuinely disputed fact. *Rawling* v. *New Haven,* 206 Conn. 100, 104, 537 A.2d 439 (1988); *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). "[T]he moving party for summary judgment is held to a strict standard: he "must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of mate-

rial fact." *Plouffe* v. *New York, N.H. & H.R. Co.,* 160 Conn. 482, 488, 280 A.2d 359 [1971]." *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 307, 407 A.2d 971 (1978). Practice Book § 384 requires that a summary judgment shall be rendered forthwith if the "proof submitted show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, "questions about motive, intent and good faith should not be resolved by summary judgment . . . ." *Multi-Service Contractors, Inc.* v. *Vernon,* 193 Conn. 446, 451–52, 477 A.2d 653 (1984); *Town Bank & Trust Co.* v. *Benson,* supra, 309; *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 381, 260 A.2d 596 (1969).

The procedure for summary judgment is governed by Practice Book §§ 378–386. "A motion for summary judgment *shall* be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . The adverse party . . . *shall* file opposing affidavits and other available documentary evidence. . . . " (Emphasis added.) Practice Book § 380.

Pleadings per se do not constitute documentary proof under § 380. Allegations of pleadings not admitted by a party are not proof of their contents. They merely set forth the cause of action and the issues of fact and law raised in the pleadings. The framework of the case is built by the pleadings. Unadmitted allegations of pleadings do not constitute documentary proof of the existence of a genuine issue as to any material fact on a motion for summary judgment. The quantum of evidentiary proof admissible at trial relevant to these allegations, or any later amendment of them, is not documentary proof under § 380 probative of, or relevant to, the grant or denial of summary judgment. The

court's consideration of a motion for summary judgment is limited to the evaluation as a matter of law of the documentary proof submitted under § 380. Additionally, in passing upon a motion for summary judgment, the trial court must view the documentary proof in the light most favorable to the nonmovant. *Rawling* v. *New Haven,* supra; *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984); *Town Bank & Trust Co.* v. *Benson,* supra, 309; *United Oil Co.* v. *Urban Redevelopment Commission,* supra, 380.

The trial court erred, therefore, when, after finding that the plaintiff's good faith in accelerating payment of the notes was a question of fact, it resolved the question itself and overlooked the special defense of the defendant. When the notes are due is a clear question of fact, and yet, under the court's own hypothesis, it failed to find that the defendant in its special defense to the first and second counts alleged: "The notes referred to are not yet due according to their terms." The court by rendering summary judgment on the first and second counts resolved this issue of fact. It erred in doing so.

The trial court expressly found in this case that the "concept [of good faith] has been codified in Connecticut," citing General Statutes § 42a-1-208. That provision of the Uniform Commercial Code specifies that an option to accelerate payment contained in a note gives the holder "power to do so only if he in *good faith* believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised." (Emphasis added.) Since the defendant did not specifically plead the plaintiff's lack of good faith under the provisions of Practice Book § 164, the trial court concluded that this question of fact was not a "genuine issue" before it in its consideration of the

plaintiff's motion for partial summary judgment. In so ruling, the court also erred by misconstruing the requirements of § 42a-1-208.

In *McKay* v. *Farms & Stockmens Bank of Clayton*, 92 N.M. 181, 585 P.2d 325, cert. denied, 92 N.M. 79, 582 P.2d 1292 (1978), the Court of Appeals of New Mexico considered the precise question now before this court under the Uniform Commercial Code. In that case, the plaintiffs brought suit to recover damages for tortious and wrongful acceleration of several promissory notes held by the defendant bank and secured by chattel. On default in payment, the bank extended the maturity date. Before that time, however, the bank deemed itself insecure and under its option accelerated the maturity of the notes. It thereafter declared the notes in default and took possession of the security, some of which it sold. In the debtors' suit against the bank for wrongful acceleration of the promissory note, the trial court granted the bank's motion for summary judgment. On appeal, the court of appeals found error and set aside the summary judgment.

The court's reversal was based on the provisions of the New Mexico Uniform Commercial Code, N.M. Stat. Ann. §§ 55-1-208 and 55-1-201 (19), governing the acceleration of promissory notes. Section 55-1-208 is identical to General Statutes § 42a-1-208 cited by the trial court as requiring good faith in the acceleration of the plaintiff's notes. Section 55-1-201 (19) is identical to our General Statutes § 42a-1-201 (19) which defines "good faith" to mean "honesty *in fact* in the conduct or transaction concerned." (Emphasis added.)

The Court of Appeals of New Mexico held as follows: "The burden of proof set out in § [55-1-208], supra, . . . applied to a directed verdict and not to a motion on summary judgment. The burden of proof applied to the quantum of evidence and sufficiency of proof as to

the lack of good faith *after* all the evidence was before the court. That burden of proof does not apply to a motion for summary judgment where the sole question before the court is whether a genuine issue of material fact exists. On the contrary, the burden of proof is on the movant to show the absence of a genuine issue of fact. . . . Although § [55-1-208], supra, requires a showing of a lack of good faith by the party against whom the power to accelerate has been exercised, this does not mean that the non-movant has this same burden of proof on a motion for summary judgment." (Emphasis in original.) *McKay* v. *Farms & Stockmens Bank of Clayton,* supra, 182.

Viewing the affidavits and documentary proof before the trial court in a light most favorable to the defendant, we conclude that there is a genuine issue of material fact which should be resolved after trial. The facts contained in the parties' affidavits, together with inferences which could be reasonably and logically drawn from them, could support the defendant's claim that the plaintiff lacked good faith in accelerating payment of the notes. The plaintiff did not sustain its burden of showing the absence of a genuine issue of fact and its motion for partial summary judgment should have been denied.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.