[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CT Page 10769 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff, Marilyn Langlais, filed a four-count complaint on September 6, 1988, alleging that she is entitled to certain short term and long term disability income benefits pursuant to a multi-employer trust plan ("MET Plan") purchased by Marilyn Langlais and Associates ("Associates"), a sole proprietorship owned by the plaintiff. The MET Plan was established by the professional and Technical Services Industry Insurance Trust Fund, which purchased a group insurance policy contract from the defendant, Guardian Life Insurance Co. of America ("Guardian").
Associates became a participant in the MET Plan on June 1, 1981. The plaintiff was entitled to coverage under the policy contract, as were other individuals who were employed by Associates.
The plaintiff filed a claim on January 15, 1982, seeking short and long term disability benefits. The plaintiff filed a second claim on August 15, 1982. Guardian paid disability benefits to the plaintiff; however, the plaintiff's benefits were terminated on February 25, 1984. (Guardian's doctor had examined the plaintiff and determined that her disability was a "temporary matter pending surgical correction.") In the first count of her complaint, the plaintiff alleges that she remained disabled until March 1, 1985.
On January 10, 1987, the plaintiff filed a disability claim with Guardian, claiming that she was disabled as a result of a May 1986 auto accident. On January 6, 1988, Guardian sought to examine the plaintiff in order to determine whether or not she was still entitled to receive benefits. Guardian alleges that she failed to appear at two separate medical examinations. The plaintiff alleges that she was unable to attend these examinations due to her lack of transportation. Guardian terminated the plaintiff's benefits in April, 1988. Guardian's subsequent attempts to reach the plaintiff via regular and certified mail also failed. Finally, the plaintiff commenced the present action.
The first count of the plaintiff's complaint which sounds in common law breach of contract, alleges that Guardian illegally terminated the payment of benefits to her on February 25, 1984. The second count which also sounds in common law breach of contract, alleges that Guardian failed to pay disability benefits due the CT Page 10770 plaintiff as a result of her May 1986 accident.
On July 17, 1992, summary judgment in Guardian's favor was granted on the third and fourth counts of the plaintiff's complaint which respectively alleged violations of General Statutes sections42-110b et seq. ("CUTPA") and 38a-815 et seq. ("CUIPA"). Guardian's motion was denied as to the first and second counts because the authenticity of its documentary evidence was not attested to, and therefore, was not properly before the court. Guardian filed a new motion for summary judgment on September 28, 1992, which is the subject of this memorandum, along with a memorandum of law in support thereof and properly authenticated documentary evidence.
The plaintiff relies on her memorandum in opposition to the first motion for summary judgment, which was filed on February 18, 1992.
Summary judgment is a strictly measured remedy and is to be used with great caution and clear acknowledgment only when warranted by law. Paine Webber Jackson Curtis, Inc. v. Winters,13 Conn. App. 712, 720, 539 A.2d 595, cert. denied, 200 Conn. 803,545 A.2d 1100 (1988). A motion for summary judgment shall be rendered if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Practice Book section 384. See also Connelly v. Housing Authority, 213 Conn. 354,364, 567 A.2d 1212 (1990). To prove that there is no genuine issue of material fact, the moving party must make a showing that it is quite clear what the truth is, and that it excludes any real doubt as to the existence of any material fact. Fogarty v. Rashaw, 193 Conn. 442, 445, 476 A.2d 582 (1984). A material fact has been defined as a fact that will make a difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,578, 573 A.2d 699 (1990). In determining whether there is a material issue of fact, the court considers the evidence in the light most favorable to the nonmoving party. Connell v. Colwell,214 Conn. 242, 247, 571 A.2d 116 (1990). Once the moving party has presented supporting evidence, the opposing party must present evidence demonstrating the existence of some disputed factual issue. State v. Goggin. 208 Conn. 606, 616, 546 A.2d 250 (1988).
Where there is no genuine issue as to any material fact, the court must then decide whether the moving party is entitled to judgment as a matter of law. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11, 459 A.2d 115 (1983). That question is resolved by applying to the established facts the same criteria as used in CT Page 10771 determining whether a party would be entitled to a directed verdict on the same facts. United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 380 (1969). Connell v. Colwell, supra, 247; Connelly v. Housing Authority, supra, 364.
Guardian moves for summary judgment on the grounds that the first and second counts of the plaintiff's complaint allege state law causes of action which are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144 (a) et seq. In the alternative, Guardian moves for summary judgment on the grounds that its documentary evidence establishes that the plaintiff failed to comply with a condition precedent to her right to recover under the policy contract. Also with respect to the first count, Guardian argues that it is entitled to summary judgment because the plaintiff's claims are barred by the operation of the limitations period in the policy contract.
In response, the plaintiff argues that her disability insurance policy and her state causes of action are not governed by ERISA. The plaintiff also argues that Guardian's documentary evidence does not conclusively establish that the plaintiff failed to reasonably attempt to fulfill the condition precedent to her right to recover under the policy, and that her first count is not time-barred as a matter of law under the terms of the policy contract.
A. First Count: Contractual Limitations Period
Guardian argues that the express terms of the policy require a suit for benefits to be brought within three years of the date that proof of loss is filed, the policy provision being enforceable by implication under General Statutes section 38a-290 which prohibits policy provisions establishing suit limitation periods of less than one year from the date of loss. Thus, Guardian argues that because the plaintiff failed to file suit within the three year period, the first count of her complaint is time-barred. In response, the plaintiff argues that her breach of contract claim was brought within the limitations period found in General Statutes section52-576, which provides for a six-year period in which to file a breach of contract claim.
The relevant part of the parties' contract provides:
 Limitation of Actions: The employee can't bring a legal action against this plan until 60 days from the date he files proof of loss. And he can't bring legal action CT Page 10772 against this plan after three years from the date he files proof of loss.
 Conformity with State Laws: The time limits for giving notice and proof of loss, and for bringing legal action against this plan, may be less than those required by the laws of the state in which the employee lives. If so, we'll extend those limits to comply with the law of that state.
The plaintiff rests her argument on the latter paragraph. In the first count she alleges that she became disabled on or about June 1, 1981. The documents filed by the defendant include the notice and proof of loss submitted by the plaintiff on January 15, 1982 and August 15, 1982. They report different medical conditions. (See Defendant's Exhibits G and I). Thus under the first policy provision she would have had to file suit by August 15, 1985. However, she claims that Guardian breached the policy contract on February 25, 1984, when it "unilaterally terminated the plaintiff's benefits." In her opposing memorandum, she argues that her cause of action accrued then and that she had six years from that date to file suit on the contract.
The plaintiff fails to put this fact into evidence by way of a sworn affidavit or by way of some other documentary evidence. However, the documentary proof furnished by the defendant is inconclusive. "Unadmitted allegations of pleadings do not constitute documentary proof of the existence of a genuine issue as to any material fact on a motion for summary judgment" Paine Webber Jackson Curtis, Inc. v. Winters, 13 Conn. App. 712, 721,539 A.2d 595, cert. denied, 200 Conn. 803, 545 A.2d 1100 (1988). It does not stand to reason that an insurance company could pay benefits pursuant to a policy and then discontinue those benefits two years later while insisting that a cause of action was accruing at the same time the benefits were being paid.
Since there is a genuine issue as to a material fact, that is, whether the benefits paid were contractually adequate or whether the defendant breached its contractual obligation to the plaintiff, the defendant's motion for summary judgment on the grounds that the claim is time-barred is denied.
B. Second Count: Scope of ERISA
1. As to whether the plaintiff is a "participant" CT Page 10773
ERISA provides that an "employee welfare benefit plan" includes:
 . . . any plan, fund or program . . . maintained by an employer . . . for the purpose of providing for its participants . . . through the purchase of insurance or otherwise, (A) medical, surgical, hospital care or benefits . . . .
29 U.S.C. § 1002(1).
The term "participant" means "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit."29 U.S.C. § 1002(7); Donovan v. Dillingham, 688 F.2d 1367, 1371 n. 8 (11th Cir. 1982). The term "employee" means "any individual employed by an employer." 29 U.S.C. § 1002 (6). "Congress intended this definition to encompass the status of an `employee' under a collective bargaining agreement." (Citations omitted.) Given conventional labor-law principles, that refinement of the `employee' rubric seemingly excludes management figures. (citation omitted.) Kwatcher v. Mass. Service Emp. Pension Fund, 879 F.2d 957, 959-60
(1st Cir. 1989). Generally, an employer is not considered to be an "employee" or "participant" for purposes of ERISA. "It is a fundamental requirement of ERISA that `. . . the assets of a plan shall never inure to the benefit of any employer . . . .'" 29 U.S.C. § 1103
(c) (1); Giordono v. Jones, 867 F.2d 409 (7th Cir., 1989). In Peckham v. Board of Trustees, Etc., 653 F.2d 424, 427 (10th Cir., 1981), the court held that this statutory mandate precluded sole proprietors from having the dual status of employer-employee for purposes of ERISA. Accord Chase v. Trustees of W. Con. of T. Pension T.F.,753 F.2d 744, 748 (9th Cir. 1985); McHugh v. Teamsters Pension Trust Fund, 638 F. Sup. 1036, 1043-44 (E.D. Pa. 1986). See also Kwatcher v. Mass. Service Emp. Pension Fund, supra, 959 (holding that a sole shareholder who is employed by the corporation he owns is not a participant in an ERISA-regulated pension plan.) But see Dodd v. John Hancock Mutual Life Ins. Co., 688 F. Sup. 564, 571 (E.D.Cal. 1988) (contra).
Furthermore, in defining the term "employee" the regulations adopted by the Secretary of Labor state that:
An individual and his or her spouse shall not be deemed CT Page 10774 to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual . . . .
29 C.F.R. § 2510.3-3 (c) (1) (1992).
In the present case, the plaintiff's affidavit states that she was the owner of a sole proprietorship, and that she purchased the MET Plan to benefit herself and her employees. The plaintiff's affidavit raises a genuine issue of material fact as to whether she qualifies as a "participant," or whether she qualifies as an "employer" in which event her MET Plan would be outside the scope of ERISA. The plaintiff's status under the MET Plan also involves a question of law, based upon the interpretation of ERISA, which is not addressed for the purpose of deciding the present motion for summary judgment.
2. As to whether the plaintiff's MET Plan qualifies as an "Employee Welfare Benefit Plan" pursuant to29 C.F.R. § 2510.3-1
The pertinent regulations state that the term "employee welfare benefit plan" does not include a group insurance program offered by an insurer to employees under which:
 (1) No contributions are made by an employer or employee organization;
 (2) Participation the (sic) program is completely voluntary for employees or members;
 (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
 (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. CT Page 10775
29 C.F.R. § 2510.30-1(j) (1992).
"The `and' connector indicates that the existence of any one of the four criteria listed in the regulation would prevent a group insurance plan, otherwise qualifying as an ERISA plan, from being excluded from coverage under the Act." Memorial Hospital System v. Northbrook Life Ins. Co., 904 F.2d 236, 241 n. 6 (5th Cir. 1990).
While the plaintiff's affidavit establishes that she collected and paid premiums into the MET Plan, the affidavit also states: (1) that the plaintiff did not mandate employee participation in the MET Plan; (2) that the plaintiff did not publicize the program and (3) that the plaintiff did not receive compensation for her duties with respect to the MET Plan. Guardian's affidavit and evidence do not dispute or contest the facts as stated in the plaintiff's affidavit.
The plaintiff's affidavit raises genuine issues of material fact with respect to whether the plaintiff's participation in the MET Plan affects its qualification as an "employee welfare benefit plan" pursuant to 29 C.F.R. § 2510.3-1(j), as the affidavit raises facts which may place the plaintiff's MET Plan outside the scope of the regulations and thus outside the scope of ERISA.
Furthermore, with respect to the scope of ERISA, it has been held that the Act does not regulate "bare purchases or . . . insurance where . . . the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." Taggart Corp. v. Life Health Benefits Admin., 617 F.2d 1208 (1980). In addition to purchasing insurance benefits for employees, circumstances must indicate that the employer is committed to the continuation of insurance benefits for its employees. Donovan v. Dillingham, supra, 137.
While the plaintiff states in her affidavit that she intended to guarantee continuing benefits for her employees (provided that they enrolled in the MET Plan), the plaintiff also states that she did not control any employee fund or asset pool. This raises another genuine issue of material fact as to whether the plaintiff's MET Plan is within the scope of ERISA.
Guardian's motion for summary judgment on the second count is therefore denied.
C. Alternate Ground: As to whether the plaintiff's failure to appear for medical examinations was reasonable. CT Page 10776
"It is well established that provisions in insurance policies requiring the insured to submit to physical examinations are reasonable and valid." Couch on Insurance 3d section 49a: 356. In the absence of statutory authority to the contrary, and provided such provisions are given a reasonable construction, "the insured's refusal to be examined by the insurer's physician, without reasonable excuse, will bar the insured's recovery." (Emphasis added.) Id. section 49A: 357. See also Reardon v. Mutual Life Insurance Co., 138 Conn. 510, 519, 86 A.2d 570 (1952) (failure to comply with a reasonable policy condition providing for a right to an autopsy under reasonable circumstances would operate to defeat a right to recovery under a policy).
In support of its motion for summary judgment, Guardian submits documents which pertain to various attempts to schedule medical examinations for the plaintiff, and which evidence the plaintiff's failures to appear at these examinations. (Defendant's Exhibits R, S, T, U, V, W and X.) In her affidavit submitted in opposition to Guardian's motion, the plaintiff states that in February and March of 1988, she had no access to transportation, and was "disabled, immobile and in great pain," and that her physical condition left her unable to comply with Guardian's demands for medical examinations.
While there are no questions of fact concerning the plaintiff's failure to appear at the medical examinations, plaintiff's affidavit raises a genuine issue of material fact with respect to the reasonableness of her excuses. There is a genuine issue of material fact as to whether the plaintiff's excuses are so unreasonable that they would serve to defeat the right to recovery under the policy.
Guardian's motion for summary judgment on the second count of the complaint is denied.
LEHENY, J.