[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The defendant United Technologies Corporation (UTC) moves for summary judgment. Its principal argument is that the state law breach of contract claims of the plaintiffs, who are employees of UTC, are preempted by federal labor statutes and policies as set forth in the National Labor Relations Act and the Labor Management Relations Act.
I. PROCEDURAL AND FACTUAL HISTORY
In May, 1994, the plaintiffs filed the present action alleging common law claims of breach of contract, promissory estoppel, negligent misrepresentation and violation of General Statutes § 31-71a. In June, 1994, UTC filed a petition for removal of this matter to federal court pursuant to 28 U.S.C. § 1441. The removal petition asserted that because the plaintiffs' claims arise out of a collective bargaining agreement subject to the National Labor Relations Act; 29 U.S.C. § 151; and, § 301 of the Labor Management Relations Act; 29 U.S.C. § 141; the state court is preempted from hearing this matter.
The defendant's removal petition and the plaintiffs' motion to remand the case to state court were assigned to United States Magistrate Judge Thomas Smith whose Recommended Ruling granted the defendants' motion to remand. Over the objection of the defendant, the Recommended Ruling was adopted by United States District Court, Nevas, J., ordering the case remanded to this court.
Judge Smith's Recommended Ruling thoroughly and succinctly summarized the relevant facts. "The named plaintiffs are presently hourly employees of the Pratt Whitney division of United Technologies. On September 28, 1992, the defendant demoted the plaintiff Barbieri from a salaried position to an hourly CT Page 5845 position. On April 12, 1993, the plaintiffs Porter and Raptis were also demoted from salaried positions to hourly ones. During the time that the plaintiffs were employed in the salaried managerial positions, they were not members of the company's bargaining unit, and therefore, were not covered under the collective bargaining agreement (the "agreement").
"The plaintiffs allege that while they were employed as salaried employees, and not members of the union, the defendant made an offer to each plaintiff to pay that worker a wage supplement if the plaintiff agreed to be demoted to hourly status. Following such demotion, the plaintiffs would also be entitled to any benefits derived from the collective bargaining agreement because hourly employees are automatically union members subject to the agreement.
"The wage supplement was a specific amount per hour, which would decline at a specified rate over time until it reached zero. According to the defendant, the company informed the plaintiffs that the wage reduction provisions were drawn directly from the collective bargaining agreement. If the plaintiffs decided to decline the defendant's offer, they would be laid off and receive benefits under the Pratt Whitney Separation Agreement.
"Each of the plaintiffs accepted the defendant's offer, began working as hourly employees, and were paid the wage supplement. With the supplement, the defendant paid each of the plaintiffs an hourly rate which exceeded the maximum rate of their assigned labor grade.
"During the Spring of 1993, a union representative raised the issue that salaried employees demoted to hourly status were being treated more favorably than hourly workers demoted to a lower hourly grade. On October 19, 1993, the defendant and the union amended the agreement with a provision stating that salaried workers demoted to hourly positions would receive no more than the maximum rate for the labor grade they were assigned to.
"On or about November 21, 1993, the defendant stopped paying the wage supplement and reduced the hourly rate of each of the plaintiffs to the maximum rate for the labor grade they were assigned to. The defendant informed each of the plaintiffs that the wage reduction was required by a `1993 Company/Union Agreement'". CT Page 5846
Based on those facts, the Federal Court determined that prior to their demotion the plaintiffs were not "employees" within the meaning of the collective bargaining agreement, and that, therefore, the plaintiffs' claim does not arise out of the collective bargaining agreement. Rather, the Court found that "the promise to pay the wage supplement is not founded upon rights created in the bargaining agreement. It s a separate and distinct agreement, and resolution of the plaintiffs' claims will not be preempted by § 301 of the LMRA." Accordingly, the Court remanded the case to state court for consideration of the plaintiffs' state law breach of contract claims.
This matter having been remanded to state court, the defendant now moves for summary judgment, raising essentially the same arguments it presented to the federal court. In addition to claiming, as it did in federal court, that the plaintiffs' claims are preempted by the Labor Management Relations Act ("LMRA"), the defendant also asserts that the claims are preempted by the National Labor Relations Act. Finally, the defendant argues that to the extent the plaintiffs can successfully prove that the defendant entered into contracts with the plaintiffs providing them with a wage supplement, such contracts are illegal, violative of public policy and therefore unenforceable.
II. STANDARD FOR GRANTING SUMMARY JUDGMENT
The standard for granting a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105 (1994) (internal quotations and citations omitted). Under this test, "questions about motive, intent and good faith should not be resolved by summary judgment." PaineWebber Jackson Curtis v. Winters, 13 Conn. App. 712, 721
(1988). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski,206 Conn. 495 (1988). CT Page 5847
III. DISCUSSION
As previously noted, the essence of the plaintiffs' claim is that while they were salaried employees and, therefore, not subject to the collective bargaining agreement, they entered into a binding, enforceable contract with the defendant in which UTC promised to pay the plaintiffs a wage supplement if the plaintiffs agreed to be demoted to hourly employees. The plaintiffs claim that the defendants have breached that contract by refusing to pay the agreed upon wage supplement.
The defendant, for its part, claims, alternatively, that: (1) it did not enter into a contract providing for a wage supplement because it never extended such an offer to the plaintiffs; (2) even if such an offer had been made and accepted, such a contract would be in violation of the exclusivity provisions of the National Labor Relations Act and the Labor Management Relations Act and therefore any claims arising out that contract are preempted by the NLRA and LMRA.
The parties' competing claims concerning the formation and existence of the so-called wage supplement contract demonstrates why summary judgment is not appropriate in this case. The threshold dispute in this case is whether the parties entered into such a contract, and if so, the terms of that contract. Reduced to its essence the argument is this simple: the plaintiffs claim that while they were still salaried employees they entered into a contract in which the defendant promised it a wage supplement if they, the plaintiffs, agreed to a demotion to an hourly wage. The defendant denies it ever made such an offer, claiming that the so-called "offer" was nothing more than a factual description of the alternatives available to the plaintiffs under the collective bargaining agreement.
It is axiomatic that summary judgment is peculiarly inappropriate to resolve factual disputes concerning the formation of a contract. "Questions about motive, intent and good faith should not be resolved by summary judgment." Id. The dispositive material fact in this case, as framed by the defendant's response to the plaintiffs' allegations, is the existence or not of the contract the plaintiffs seek to enforce. The plaintiffs insist such a contract exists; the defendant denies it. Summary judgment is clearly inappropriate to resolve this fundamental factual dispute. CT Page 5848
The defendant next argues, in the alternative, that the plaintiffs — notwithstanding the allegations of their complaint alleging the existence of a contract independent of the collective bargaining agreement — are actually seeking to enforce the terms of the collective bargaining agreement. The bargaining agreement provides a wage supplement for hourly
employees whose positions are eliminated or reduced (emphasis supplied). The defendants allege that the preemption doctrine prohibits this court from considering that claim. Specifically, the defendant argues that under both Garmon preemption; San DiegoBuilding Trades Council v. Garmon, 359 U.S. 236 (1959); andMachinists preemption; Machinists v. Wisconsin EmploymentRelations Commission, 427 U.S. 132 (1976); this court is prohibited from considering claims that arise under the collective bargaining agreement.
The question under Garmon preemption is whether action by a state court interferes in an area in which Congress granted the National Labor Relations Board primary jurisdiction to determine whether the conduct in question is either prohibited or protected by the National Labor Relations Act. The dispositive issue forGarmon preemption is whether the controversy presented to the state court is identical to the issue that could have been presented to the NLRB. Sears Roebuck Co. v. San Diego DistrictCouncil of Carpenters, 436 U.S. 180, 197 (1978). In order to successfully invoke Garmon preemption, the defendant must demonstrate that the claims made in this action are the same as could be presented to the NLRB.
A review of the claims of the parties indicates that the claims asserted by the plaintiffs are not identical to those which could be presented to the NLRB. The plaintiffs allege the existence of an enforceable contract requiring the defendants to pay them a wage supplement upon their voluntarily relinquishing their positions as salaried employees. The plaintiffs argue that this contract was created while they were salaried employees and therefore does not implicate the collective bargaining agreement, which, by its terms, applies only to hourly employees. The defendant, on the other hand, claims that formation of such a contract, if it exists, would constitute an unfair labor practice subject to NLRB jurisdiction, because the defendant is prohibited from direct dealing with bargaining unit employees.
The issue that would be presented to the NLRB, therefore, is CT Page 5849 whether it was an unfair labor practice for the defendant to bargain directly with the plaintiffs at the time they were still salaried employees. By contrast, the issues before this court are not whether the defendant's actions constitute an unfair labor practice, but whether: (1) the defendant agreed to pay a wage supplement; (2) whether such agreement is enforceable; and (3) whether the defendant has breached that agreement. In short, the fact that the defendant may have committed an unfair labor practice by entering into a contract with the plaintiffs, does not, in itself, relieve the defendant of its obligations under that contract. Because the issue in this case, therefore, is not identical to the issue that might be presented to the NLRB,Garmon preemption does not apply. See, Belknap Inc. v. Hale,463 U.S. 491 (1983) (holding that the enforceability of promises to hire replacement workers is not the same issue as whether offers of permanent employment to replacement workers is an unfair labor practice).[1]
Likewise, the defendant's claim of Machinists preemption is also misplaced. Under Machinists v. Wisconsin EmploymentRelations Comm'n, supra, preemption applies to state laws or state court proceedings that upset the balance between union power and employer power that was established by federal labor law and which Congress intended to be unregulated by state law. In Belknap, Inc. v. Hale, supra, the Court considered whetherMachinists preemption bars a claim by replacement workers against an employer for breach of contract resulting from the employer's agreement with the union to fire the replacement workers. The Court concluded that the replacement employees may still maintain a cause of action for breach of contract under state law even though the employer's offer of permanent employment might be prohibited by federal statute. According to the Court, the preemption doctrine may not relieve an employer for liability for breach of contract even if the formation or terms of the contract might give rise to a claim of an unfair labor practice. A state court proceeding to enforce such a contract will not upset the balance of power established between union and management by federal labor law, and therefore, is not barred by Machinists
preemption. Id.
The defendant also argues that the plaintiffs' claim is preempted by § 301 of the Labor Management Relations Act. That provision serves to preempt state law claims when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor CT Page 5850 contract. The plaintiffs' claims are tested by whether they exist independently of any rights established by the collective bargaining agreement or whether they are "inextricably intertwined with consideration of the terms" of the agreement.Allis Chalmers v. Lueck, 471 U.S. 202, 213 (1985).
The defendant's argument was fully considered and rejected by the United States District Court. As previously noted, this precise claim was raised in the defendant's removal petition and was thoroughly examined in Judge Smith's Recommended Ruling on the plaintiff's petition to remand. Judge Smith concluded that the "promise to pay the wage supplement is not founded upon rights created in the bargaining agreement. It is a separate and distinct agreement, and resolution of the plaintiffs' claims will not be preempted by § 301 of the LMRA." Although the parties have again thoroughly briefed this claim, this court is not persuaded, based on its review of the arguments of the parties, that it should depart from the ruling of the United States District Court, and that as a matter of law, the defendant is entitled to judgment on its claim that the contract the plaintiffs seek to enforce arises out of the collective bargaining agreement. Strada v. Connecticut Newspapers, Inc.,193 Conn. 313 (1984).
Accordingly, the defendant's motion for summary judgment is denied.
SO ORDERED.
Robert L. Holzberg, J.