[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
CT Page 11885
The defendant moves for summary judgment on the grounds; 1) that vicarious liability for the defendant priest's alleged sexual misconduct with the plaintiff cannot be imposed on the Oblate Institutional Defendants on the basis of the Connecticut doctrine of respondeat superior; 2) that vicarious liability for the defendant priest's alleged sexual misconduct cannot be imposed on the Oblate Institutional defendants on the basis of the Connecticut doctrine of apparent authority.
This is an action for damages in which the plaintiff, Anne Mullen, claims that she was sexually abused by the defendant, Dr. Joseph A. Horton, who is a clinical psychologist, a Catholic priest and a member of the Oblates of Mary Immaculate ("Oblate Order"), a Catholic men's religious order of the Roman Catholic Church. The other named defendants are defendant Horton's professional corporation, Center for Individual Group Therapy, Inc., and two corporations of the Oblate Order, the Missionary Oblates of Mary Immaculate, Inc. of New Hampshire and the Franco-American Oblate Fathers, Inc. of 289 Windham Road, Willimantic, Connecticut, which two Oblate Order related corporations are hereinafter referenced collectively as the "Oblate Institutional Defendants."
In a seven count complaint, the plaintiff alleges the following. In 1988, defendant Horton, a practicing Roman Catholic priest, ordained by and an agent, servant and/or employee of the defendants, was assigned weekend priestly duties at Saint Matthew's Church in Tolland, Connecticut. During this time, Horton also held himself out to the general public as a practicing psychological counselor, engaged in individual and group psychotherapy and related social services.
In August of 1988, the plaintiff sought the professional care and treatment of defendant Horton for psychological, mental, emotional and marital problems. The plaintiff, a practicing Roman Catholic, sought counseling from defendant Horton, specifically, because of his joint status as a psychologist and a Roman Catholic priest associated with her parish. On occasion, her counseling sessions took place at the Immaculate Retreat House, a facility owned and/or operated by the Oblate Institutional Defendants.
During the course of these consultations, the plaintiff CT Page 11886 communicated to defendant Horton numerous personal and confidential facts about her life, problems, personality, and marriage. Beginning with his office consultations at the Center for Individual and Group Psychotherapy and his counselling sessions at the Immaculate Retreat House, defendant Horton instituted, fostered and maintained an emotional dependence and physical relationship with the plaintiff. These relations continued for a period of approximately two and a half years, the last physical contact occurring on or about February 8, 1992 and last personal contact occurring on or about February 14, 1992.
In counts one and two, the plaintiff alleges that defendant Horton, acting as an agent and/or servant of the Oblate Institutional Defendants, engaged in sexual contact with the plaintiff that amounts to reckless assault and battery and negligent assault and battery, respectively. In count three, the plaintiff alleges that defendant Horton's actions in carrying on an intimate relationship with the plaintiff constitute unintentional infliction of emotional distress. Count four sounds in professional negligence and is directed at defendants Horton and the Center for Individual and Group Psychotherapy, Inc. Count five also sounds in professional negligence and is directed at defendant Horton and the Oblate Institutional Defendants.
In count six, the plaintiff alleges that defendant Horton, while acting as an agent and/or servant of defendant Center for Individual and Psychotherapy, engaged in unfair or deceptive actions in violation of General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act. Finally, in count seven, the plaintiff alleges that defendant Horton, while acting as an agent and/or servant of the Oblate Institutional Defendants, engaged in unfair or deceptive actions in violation of General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act.
On October 31, 1994, the Oblate Institutional Defendants filed a motion for summary judgment as to counts one, two, three, five and seven on the grounds that there is no genuine issue of material fact as to their nonliability to the plaintiff on the basis of the allegations in those counts. The defendants filed an accompanying memorandum of law, several affidavits, and the plaintiff's deposition testimony transcript in support of their motion for summary judgment.
On January 18, 1995, the plaintiff filed a memorandum in CT Page 11887 opposition to the defendants' motion, as well as two affidavits and the deposition testimony transcripts of the plaintiff and defendant Horton. On April 25, 1995, the defendants filed a reply memorandum and, again, on June 7, 1995, the plaintiff filed a supplemental memorandum of law in opposition to the motion for summary judgment.
On June 12, 1995, the defendants filed a supplemental reply memorandum in support of their motion, and on June 19, 1995, the plaintiff filed a second supplemental memorandum of law in opposition to the motion. Finally, on June 23, 1995, the defendants filed a second supplemental reply memorandum in response to the plaintiff's second supplemental memorandum of law.
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Scinto v. Stamm, 224 Conn. 524, 530,620 A.2d 99 (1993). "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like . . . The adverse party . . . shall file opposing affidavits and other available documentary evidence." (Citations omitted.) PaineWebber Jackson Curtis, Inc. v. Winter, 13 Conn. App. 712, 721,539 A.2d 595 cert. denied, 200 Conn. 803, 545 A.2d 1100 (1988).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citations omitted.) Scinto v. Stamm, supra,224 Conn. 530. "The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted.)Connell v. Colwell, 214 Conn. 242, 247, 571 A.2d 116 (1990).
Counts One and Two
In their memoranda filed in support of their motion for summary judgment, the Oblate Institutional Defendants argue that the allegations in counts one and two are based exclusively on defendant Horton's alleged having "engaged in sexual contact with the plaintiff." The defendants further argue that all sexual activity was clearly outside the scope of any possible employment which defendant Horton may have had with the Oblate Institutional CT Page 11888 Defendants. Therefore, the defendants argue that there is no basis for invoking the respondeat superior doctrine so as to impose any vicarious liability on the Oblate Institutional Defendants for that alleged sexual contact.
In opposition, the plaintiff argues that a question of fact exists as to whether defendant Horton's conduct was sufficiently within the scope of his employment so as to impose vicarious liability on the Oblate Institutional Defendants. The plaintiff argues that the fact that an employee disobeys the orders of an employer is not a defense because such disobedience, easily proved, could exonerate the employer and essentially do away with the rule of respondeat superior and the policy it advances. (See Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, p. 12). The plaintiff further argues that "Father Horton might have been aware on some level that engaging in a personal and physical relationship with the Plaintiff was proscribed by the standards of care relative to pastoral counseling . . . But his actions with respect to the Plaintiff arose directly out of and as a result of the legitimate activities he was engaged in on behalf of the Church." (Plaintiff's Memorandum, pp. 14-15.) The plaintiff argues that defendant Horton's establishment of the initial counseling relationship with the plaintiff was actuated by a desire to fulfill his pastoral mission. As such, the plaintiff argues that the Oblate Institutional Defendants are vicariously liable to her under the doctrine of respondeat superior.
"Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business . . . But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law." (Citations omitted.) A-G Foods,Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 207, 579 A.2d 69
(1990).
"The underlying rationale of the modern doctrine of respondeat superior . . . is that `every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of duty on the part of such others while they are engaged upon his business
and within the scope of their authority.'" (Citations omitted; emphasis in original.) Gutierrez v. Thorne, 13 Conn. App. 493,498, 537 A.2d 527 (1987). "A servant acts within the scope of CT Page 11889 employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vitalinquiry in this type of case is whether the servant on theoccasion in question was engaged in a disobedient or unfaithfulconducting of the master's business, or was engaged in anabandonment of the master's business . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Citations omitted; emphasis added.) Glucksman v. Walters, 38 Conn. App. 140, 145 ___ A.2d ___ (1995). It must be the affairs of the principal and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply. (Citations omitted.) Larsen Chelsey RealtyCo. v. Larson, 232 Conn. 480, 501 ___ A.2d ___ (1995). Gutierrezv. Thorne, supra, 13 Conn. App. 498.
Against this background, the doctrine of respondeat superior is inapplicable to the present case. This conclusion holds true even when the motion for summary judgment is viewed in the light most favorable to the plaintiff.
In order to hold the Oblate Institutional Defendants vicariously liable for defendant Horton's alleged sexual contact with the plaintiff, the plaintiff must not only show that defendant Horton was engaged in the scope of his employment during those sexual relations. The plaintiff must also show that the business or affairs of the Oblate Institutional Defendants, the alleged principal for whom defendant Horton acted as an agent, were furthered as a result of defendant Horton's conduct. This court would be hard pressed to find that the Oblate Institutional Defendant's business was furthered by the acts of defendant Horton.
In her memorandum of law in opposition to the motion of summary judgment, the plaintiff argues that in the present case, "there are so many factors that can be cited to support a finding of vicarious responsibility that the court should not consider [the present case] one of these occasional cases where summary judgment can be entered." (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, p. 11.) The plaintiff further argues that a question of fact exists as to whether she received her injury as a result of defendant Horton's negligent mishandling of the transference/counter-transference phenomenon CT Page 11890 while conducting himself in inseparable part as a priest. The plaintiff argues that a question of fact exists as to whether the defendant's conduct and injury to the plaintiff was incidental to the Oblate Institutional Defendant's enterprise and therefore they should be held vicariously liable to the plaintiff.
The plaintiff has not demonstrated that defendant Horton's actions were authorized by the Oblate Institutional Defendants. The court can accept the plaintiff's argument that in offering pastoral counseling to a devout Catholic, defendant Horton was, indeed, furthering the mission of the Oblate Institutional Defendants. However, the evidence suggests that defendant Horton was acting for his own interests and not in furtherance of the Oblate Institutional Defendants' business whenever or wherever he engaged in sexual contact with the plaintiff. The present case is not one in which a servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business. Rather, the present case represents a situation where the servant, defendant Horton, was engaged in an abandonment of the master's business. "If employee's actions are not authorized by his employer and he is acting for his own interest and not in furtherance of his employer's business, employer cannot be held vicariously liable for employee's actions." (Citations omitted.)Larsen Chelsey Realty Co. v. Larsen, supra, 232 Conn. 501.
The Oblate Institutional Defendants are a religious order of Catholic priests. As some of the members of that order attest in their affidavits accompanying the defendant's motion for summary judgment: "The laws and standards of the Roman Catholic Church and the rules of the Oblate Order, as well as each priest's personal commitment to celibacy, have expressly prohibited eachpriest member of the Oblate Order from engaging in any sexualactivity of any kind and from seeking or maintaining any personally-intimate or marital relationship with any woman, and for that reason, any and all attempted or actual sexual activity or personally-intimate relationship or marital relationship, which any priest member of the Oblate Order may have sought or maintained with any woman during that time frame, would clearly have been outside the scope of any employment which that person might possibly have held as a Catholic priest or as a member of the Oblate Order." (Rev. Capen Affidavit, ¶ 10; Rev. Lozier Affidavit ¶ 8; and Rev. Levesque Affidavit, ¶ 9.) Furthermore, the plaintiff conceded this point in her deposition testimony, admitting that at all times during her relationship with defendant Horton, she understood that "it was clearly CT Page 11891 outside the scope of any Catholic priest's employment to engage in sexual relations with anyone." (Plaintiff's Deposition, p. 97. ¶ 8-14.) The plaintiff further recognized in her deposition testimony that defendant Horton's engaging in sexual relations with her "was certainly not for the purpose of promoting any of the work of the Catholic Church." (Id., 97, ¶ 15-20.)
Thus, the evidence suggests that defendant Horton's engaging in sexual contact with the plaintiff was not an act to further the business or affairs of the Oblate Institutional Defendants. That being the case, there is no genuine issue of material fact that defendant Horton's conduct constituted an abandonment of the Oblate Institutional Defendants' business.
The plaintiff cites Glucksman v. Walter, supra, 38 Conn. App. 134, for the proposition that the standard by which we judge whether the issue of respondeat superior should be submitted to a jury does not require a clear furtherance of the principal's business on the part of the employee. The plaintiff argues that so long as the act in question is reasonably within the scope of the employee's employment and reasonably in furtherance of the principal's business, then the principal is liable to a third person injured thereby.
The plaintiff argues that the situation in Glucksman is not unlike that in the present case in that defendant Horton's engaging in sexual intercourse with the plaintiff couldreasonably be viewed as an act in furtherance of the Oblate Institutional Defendants' business or affairs.
This court disagrees with this analysis. Glucksman v. Walters
is distinguishable from the present case. In Glucksman, the court addressed the issue of whether an employer, the YMCA, could be held vicariously liable under the theory of respondeat superior for its employee's assault on a patron during a pick-up basketball game. There was testimony from a YMCA employee and the YMCA director that the YMCA professional staff was always considered to be on duty. Glucksman, supra, 146. Further, the professional staff was always required to maintain order in the facility. Id. The only reason Walters was in the YMCA was because of his job, initially as a volunteer and then, at the time of the attack, as a part-time employee. Id.
From this evidence, the court concluded that it could reasonably be inferred that "Walters had a degree of CT Page 11892 responsibility as a YMCA employee not only during scheduled work hours but also when he was playing basketball." Id., 146-47. The court further concluded that "[i]t can . . . be reasonably inferred that the basketball games are one aspect of the YMCA's business, and that that business is furthered when an employee is keeping order on the court." Id., 147.
In the present case, although it can be reasonably inferred that pastoral counselling is one aspect of the Oblate Institutional Defendants' business, the act of sexual intercourse between a priest and parishioner is not. Therefore, it necessarily follows that defendant Horton's engaging in sexual intercourse with the plaintiff was not an act in furtherance of the Oblate Institutional Defendants' business. Accordingly, defendants' motion for summary judgment on the ground that the doctrine of respondeat superior is inapplicable to counts one and two is granted.
Next, the plaintiff argues that a question of fact exists as to whether the Oblate Institution Defendants are vicariously liable to her under the doctrine of apparent agency. In advancing this argument, the plaintiff places great reliance on Beckensteinv. Potter and Carrier, Inc., 191 Conn. 120, 464 A.2d 6 (1983).
Agency may be either actual or apparent. Bottirello v.Stefanovirz, 177 Conn. 22, 411 A.2d 16 (1979). "[A]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." First CharterNational Bank v. Ross, 29 Conn. App. 667, 672, 657 A.2d 909
(1992). "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertence, causes or allows third persons to believe his agent possesses . . . Apparent authority must be determined by the acts of the principal rather than by the acts of the agent." (Citations omitted.) Beckenstein v. Potter Carrier, Inc., supra, 191 Conn. 140.
"The principal in such a[n agency] relationship is bound byand liable for, the acts which his agent does with or within theactual or apparent authority from the principal, and within thescope of the agent's employment." (Citations omitted.) Bank ofMontreal v. Gallo, 3 Conn. App. 268, 273, 482 A.2d 1101 (1985), cert. denied, 195 Conn. 803, 491 A.2d 1103 (1985). "The knowledge of the agent is considered knowledge of the principal unless the agent in reality is acting adversely to or in fraud of his principal or in circumstances where it is apparent for other CT Page 11893 reasons that it is not probable that he will communicate the facts to his principal." (Citations omitted, emphasis in original.) Bank of Montreal v. Gallo, supra, 3 Conn. App. 275. "[T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority." (Citations omitted.) Lettieri v. American SavingsBank, 182 Conn. 1, 8, 437 A.2d 822 (1980). See also Munson v.United Technologies Corp., 28 Conn. App. 184, 188-89,609 A.2d 1066 (1992).
In her memorandum of law in opposition to the defendants' motion for summary judgment, the plaintiff argues that in the present case, defendant Horton's "position as a priest connected with the Roman Catholic Church allowed him to gain the trust and confidence of the "plaintiff, a devout Catholic who was raised in the Church. In addition to the authority invested in him generally by the Church, [the Oblate Institutional Defendants] endowed father Horton with apparent authority to combine pastoral counseling with clinical counseling." (Plaintiff's Memorandum in Opposition, p. 30).
In response, the defendants, pointing to the deposition testimony of the plaintiff, argue that the plaintiff understood that "it was clearly outside the scope of any Catholic priest's employment to engage in sexual relations with anyone." (Defendant's Reply Memorandum citing Plaintiff Mullen's Deposition, p. 97, ¶¶ 8-14.) The defendants further assert that the plaintiff recognized that defendant Horton was under a vow to abstain from sexual activity and that she had no reason to believe that he had been excused or relieved of that obligation . . . to abstain from sexual activity." Defendant's Reply Memorandum, p. 18, citing plaintiff Mullen's Deposition, p. 98, ¶¶ 15-25.) Finally, the defendants argue that the plaintiff "admitted that there had never been anything said by any member of the Oblate Institution Defendants which had ever given her any reason to believe that the Oblate Institutional Defendants had ever approved or authorized defendant Horton to engage in sexual intercourse with her." (Defendants' Reply Memorandum, p. 19, citing plaintiff's deposition, p. 100, ¶¶ 16-22.) CT Page 11894
Unlike respondeat superior, the doctrine of apparent authority must be determined by the acts of the principal rather than the acts of the agent. See Beckenstein v. Potter Carrier,Inc., supra, 191 Conn. 140-41. Therefore, in determining if the Oblate Institutional Defendants are vicariously liable under the doctrine of apparent authority, this count must look to that semblance of authority which the Oblate Institutional Defendants, the principal, caused or allowed the plaintiff, a third person, to believe their agent, defendant Horton, possessed during the alleged sexual relations. The plaintiff must demonstrate that she personally relied on some appearance of authority which the Oblate Institutional Defendants may have created to have given her reason to believe that the Oblate Institutional Defendants authorized defendant Horton to engage in sexual relations with her.
The plaintiff has simply not met that burden. Rather, that the plaintiff has merely argued that the Oblate Institutional Defendants are vicariously liable to her because defendant Horton had apparent authority to engage in pastoral and clinical counseling and that the sexual relations arose out of these sessions. The plaintiff has not proffered any evidence, in the way of affidavits or deposition testimony, to show that she had reason to believe that the Oblate Institutional Defendants authorized defendant Horton to engage in sexual intercourse with her and that she relied on that semblance of authority when engaging in sexual intercourse with defendant Horton. In fact, the above-mentioned deposition testimony submitted by the plaintiff and defendants indicates that the Oblate Institutional Defendants had never given the plaintiff any reason to believe that they had ever approved or authorized defendant Horton to engage in sexual intercourse with the plaintiff. That that being the case, the doctrine of apparent authority is inapplicable to the present case. Therefore, the defendants' motion for summary judgment as to counts one and two of the plaintiff's complaint on this ground is granted.
Count three — Unintentional Infliction of Emotional Distress
In their memorandum of law filed in support of their motion for summary judgment as to count three, the defendants argue that judgment should enter in their favor because the allegations in that count are based exclusively on defendant Horton's alleged conduct. The defendants further argue that any attempted or actual personally-intimate relationship with any woman by CT Page 11895 defendant Horton would clearly have been outside the scope of any possible employment which he may have had with the Oblate Institutional Defendants. As such, the defendants argue that there is no basis for invoking the doctrine of respondeat superior so as to impose vicarious liability on the Oblate Institutional Defendants for defendant Horton's alleged conduct in count three.
In response, the plaintiff advances the same arguments as those with respect to counts one and two in opposition to the defendants' motion.
For the reasons stated in the above analysis of counts one and two, this court need not go into a lengthy discussion of whether the doctrines of respondeat superior and apparent authority are applicable to the allegations in count three of the plaintiff's complaint. It has already been determined that the Oblate Institutional Defendants are not vicariously liable to the plaintiff under the doctrines of respondeat superior or apparent authority. As such, the defendants' motion for summary judgment as to count three is granted.
Count Five — Professional Negligence
In count five of her complaint, the plaintiff alleges that her injuries and losses were caused by the negligence and carelessness of defendant Horton, "an agent, servant and/or employee of [the Oblate Institutional Defendants]."
In their memorandum in support of their motion for summary judgment, the defendants argue that "[e]ach of the five specifications of misconduct alleged in the . . . fifth count . . . appear to be based on Dr. Horton's alleged misconduct in his capacity as a Roman Catholic priest." (Defendants' Memorandum of Law in Support of Motion for Summary Judgment, p. 10.) The defendants further argue that defendant Horton was never assigned or given any responsibility to perform any priestly service or other work for any enterprise sponsored by the Oblate Order. Rather, the defendants argue that during all of the relevant time period, defendant Horton was free personally to contract to render priestly services for and at local parish churches. (Defendants' Memorandum of Law in Support of Motion for Summary Judgment, p. 10, citing Lozier Affidavit, ¶ 6; Levesque Affidavit, ¶ 6.) The defendants argue that "although Dr. Horton resided with the Willimantic Oblate Community as a CT Page 11896 member of that community, he paid that community from his personal outside income for the room and board services which they provided him." The defendants argue that to the extent that defendant Horton had any alleged relationship with the plaintiff as her parish priest, that priest-parishioner relationship was obviously not within the scope of any possible employment between defendant Horton and the Oblate Institutional Defendants.
In response, the plaintiff reiterates the same arguments advanced in support of her memorandum in opposition to the motion for summary judgment as to counts one, two, and three. Again, as discussed earlier, even if defendant Horton was, indeed, employed by the Oblate Institutional Defendants, defendant Horton's engaging in sexual intercourse was an act outside the scope of his employment with the Oblate Institutional Defendants. Additionally, this court would be hard pressed to find that defendant Horton's alleged sexual relations with the plaintiff were in furtherance of the business or affairs of the Oblate Institutional Defendants. Therefore, defendant Horton's alleged negligence cannot be imputed to the Oblate Institutional Defendants.
No genuine issue of material fact exists as to whether the Oblate Institutional Defendants are vicariously liable under a theory of respondeat superior for defendant Horton's alleged conduct and resultant harm to the plaintiff. Therefore, the defendants' motion for summary judgment as to count five on this ground is granted.
Additionally, for the reasons outlined earlier, this court finds that the defendants cannot be held vicariously liable under a theory of apparent authority for defendant Horton's alleged sexual contact with the plaintiff. Accordingly, the defendants' motion for summary judgment as to count five is granted.
Count Seven — Violation of CUTPA
In count seven, the plaintiff alleges that the events which transpired between defendant Horton and herself constitute a course of conduct or dealing on the part of defendant Horton. The plaintiff further alleges that defendant Horton engaged in unfair or deceptive acts or practices in the conduct of trade or commerce that are prohibited under General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act ("CUTPA"). The plaintiff seeks to hold the Oblate Institutional Defendants CT Page 11897 vicariously liable for defendant Horton's alleged violation of CUTPA.
The plaintiff argues that a question of fact exists as to whether the plaintiff is a consumer within the meaning of CUTPA. The plaintiff argues that "[l]ike most churches and non-profit organizations, the defendant orders have incorporated themselves like ordinary business entities. Most insure themselves like business entities. And in general, in many ways, conduct themselves in a business manner. Churches are in the `trade or commerce' of religious services and members are `consumers' or [sic] those religious services." (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, p. 41.) Therefore, the plaintiff argues that a consumer relationship did, in fact, exist between the Oblate Institutional defendants and herself.
In response, the Oblate Institutional Defendants argue that even if a consumer relationship did exist between the plaintiff and the defendants, the plaintiff cannot proceed on her CUTPA claim because she cannot satisfy any of the requirements of the so-called cigarette rule. Specifically, the Oblate Institutional Defendants argue that the facts make it clear that the plaintiff could have reasonably avoided the injury about which she complains.
In opposition, the plaintiff argues that "[w]hen Father Horton engaged in intimate sexual contact, including oral sex, during his scheduled counseling sessions with Plaintiff . . . and then received Blue Cross/Blue Shield reimbursement for those sessions, Father Horton acted in a manner that offends public policy." (Plaintiff's Supplemental Memorandum of Law in Opposition to the Motion for Summary Judgment, p. 20.) Thus, the plaintiff argues that there is sufficient evidence to create a genuine issue of material fact as to whether defendant Horton's inappropriate sexual conduct may be characterized as being: against public policy, unethical and causing injury and intentional emotional distress. The plaintiff argues that since defendant Horton provided pastoral advice and counseling in his capacity as a member of the Oblate Institutional Defendants, the Oblate Institutional Defendants are vicariously liable for her alleged injuries.
General Statutes § 42-110b(a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce." CT Page 11898
The plaintiff has alleged that defendant Horton's engaging in sexual intercourse with her and receiving payments from her insurance company as compensation for her counseling sessions with defendant Horton, constitutes a violation of CUTPA. The plaintiff alleges that defendant Horton was acting on behalf of the Oblate Institutional Defendants and within the scope of his employment during these alleged sexual encounters with the plaintiff. Therefore, the plaintiff argues that the Oblate Institutional Defendants are vicariously liable for her alleged injuries.
In A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 216 Conn. 200, our Supreme Court indicated that the doctrine of vicarious liability of an employer for torts by an employee does not define the scope of liability of an employer under CUTPA for such conduct. Id., 208-09. In that case, the plaintiff claimed it had been defrauded by an employee of Pepperidge Farm while he was working in the course of his employment. The Supreme Court held that the employer's negligence in failing to prevent the intentional malfeasance of its employee was not an unfair or deceptive trade practice within the meaning of General Statutes § 42-110b(a). Id., 215. In doing so, the court examined whether the facts adduced at trial met the requirements of the so-called cigarette rule. Id., 216.
The present case differs from A-G Foods, Inc. in one very important aspect. In the present case, through their affidavits and the deposition testimony of the plaintiff, the Oblate Institutional Defendants deny that defendant Horton was their agent when engaging in sexual intercourse with the plaintiff. Although the plaintiff has alleged an agency relationship between defendant Horton and the Oblate Institutional Defendants, there exists no evidence to support this pivotal allegation and there is also no evidence to rebut the Oblate Institutional Defendants' affidavits. The alleged injury complained of did not arise out of defendant Horton's employment with the Oblate Institutional Defendants. Rather, the alleged injury arose from defendant Horton's independent, psychological counseling sessions with the plaintiff. As previously noted, the affidavits support the Oblate Institutional Defendants' contention that defendant Horton was acting in his own interest when he committed the alleged tort. The affidavits and deposition testimony further demonstrate that the defendant knew that the Oblate Institutional Defendants did not authorize defendant Horton to engage in sexual intercourse CT Page 11899 with the plaintiff.
Accordingly, this court is without any evidence to support a finding that a material fact exists with respect to the allegations of such an agency relationship. In the absence of an agency relationship, the plaintiff's CUTPA claim as against the Oblate Institutional Defendants fails as a matter of law. SeeTucci v. Days Inn, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 271770 (June 21, 1994, Rodriguez, Jr., J.).
Similarly, the doctrine of respondeat superior is inapplicable as a matter of law in this case to convert defendant Horton's conduct into a CUTPA violation. If the plaintiff were to demonstrate that the Oblate Institutional Defendants actually authorized defendant Horton to engage in sexual intercourse with the plaintiff, then the alleged actions of defendant Horton could indeed be found to have been unfair and actionable under CUTPA. Since the plaintiff has not proved such authorization by the Oblate Institutional Defendants, the Oblate Institutional Defendants' motion for summary judgment as to count seven is granted.
Mary R. Hennessey, J.