## ALLEN GLUCKSMAN ET AL. *v.* KRIS WALTERS ET AL. (12788)

DUPONT, C. J., and O'CONNELL and SPEAR, Js.

Argued March 13—decision released June 6, 1995

*Thomas M. Cassone,* with whom, on the brief, were *Christopher R. Bello, Lawrence M. Lapine* and *Robert S. Bello,* for the appellants (plaintiffs).

*Charles A. Deluca,* with whom, on the brief, was *Gary R. Khachian,* for the appellee (defendant Young Men's Christian Association of Stamford).

DUPONT, C. J. The plaintiffs, Allen Glucksman (Glucksman), and his wife, Shari Glucksman, brought this action against the defendants, Kris Walters and the Young Men's Christian Association (YMCA), to recover damages for injuries that occurred when Walters attacked Glucksman during a pickup basketball game in the gymnasium of the Stamford YMCA. The named plaintiff seeks damages in his individual capacity and Shari Glucksman seeks damages for loss of consortium.

The plaintiffs' action was brought in five counts. The first and second counts are not at issue in this appeal. The third count alleged liability on the part of the YMCA on the ground of respondeat superior. The fourth count alleged negligence on the part of the YMCA. The fifth count alleged loss of consortium based on the claims of respondeat superior and negligence.

At the close of the plaintiffs' case-in-chief, the YMCA moved for a directed verdict on the third count of the complaint. The trial court reserved judgment on that motion, and then granted the motion prior to the court's charge to the jury. The remaining counts were

fully tried and presented to a jury. On the fourth and fifth counts, the jury found for the YMCA. The plaintiffs filed a motion to set aside the verdict, which the trial court denied. The plaintiffs appeal from the judgment for the YMCA and the denial of the plaintiffs' motion to set aside the verdict underlying the judgment on the fifth count.

On appeal, the plaintiffs argue that the trial court improperly (1) directed the verdict in favor of the YMCA on the respondeat superior count of the plaintiffs' complaint, (2) permitted the YMCA's experts to testify concerning industry custom or practice, and then charged the jury that it could consider the common practices of other YMCAs, and (3) refused to charge the jury with regard to the YMCA's failure to comply with its own policies, procedures and guidelines. We reverse the judgment in part and affirm it in part.

There are certain facts that the jury reasonably could have found if it found the plaintiffs' evidence credible. At the Stamford YMCA, weekday pickup basketball games occur regularly at lunchtime. These games are aggressive and competitive. Confrontations or disagreements between players, including physical challenges, occur frequently.

On the afternoon of July 7, 1994, a pickup basketball game took place in the gymnasium of the YMCA. The plaintiff Glucksman and the defendant Walters were guarding one another. Glucksman was a member of the YMCA and Walters was a part-time employee. Glucksman had possession of the ball and moved toward the basket. As Glucksman progressed, he charged into Walters, knocking him backward, which was a foul. Walters responded by punching Glucksman in the head. Other players moved to intercede and Glucksman stumbled away from Walters

toward the basket. Walters then attacked Glucksman again, hitting him repeatedly in the head and the back.

As a result of the attack, Glucksman suffered a subarachnoid hemorrhage of the brain, a heart attack and a focal seizure. He spent thirteen days in the hospital, seven of which were in intensive care. Glucksman exhibits mood swings, memory loss and a lack of patience. His work and personal life have suffered because of the attack.

Walters, as a part-time employee of the YMCA, had permission to use the facilities during his off hours. At the YMCA, professional employees were expected to maintain order and to conduct themselves in accordance with the YMCA's policies whether on duty or not. Other part-time employees, with positions similar to Walters, considered themselves to be on duty, ready to help maintain order in the facility, during work and off hours. Employees were expected to maintain order on the basketball court where games sometimes were aggressive and unruly. At least one full-time employee expected Walters to help keep order during evening basketball games.

## I

### Respondeat Superior

The plaintiffs argue that the trial court improperly directed a verdict for the YMCA on count three of the plaintiffs' complaint, which alleged liability on the basis of respondeat superior. We agree.

"Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision directing a verdict and denying a subsequent motion to set it aside, this court considers all the evidence, including reasonable inferences, in the

light most favorable to the plaintiff." (Citations omitted.) *Sestito* v. *Groton*, 178 Conn. 520, 522, 423 A.2d 165 (1979). " '[A] party has the same right to submit a weak case [to the jury] as he has to submit a strong one . . . .' " *Somma* v. *Gracey*, 15 Conn. App. 371, 375, 544 A.2d 668 (1988).

In order to prevail on their challenge to the directed verdict, the plaintiffs must show that they presented sufficient facts to establish a prima facie case of respondeat superior. Under the doctrine of respondeat superior, "[a] master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business." *Pelletier* v. *Bilbiles*, 154 Conn. 544, 547, 227 A.2d 251 (1967). "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment. . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business . . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Citations omitted; internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 209–10, 579 A.2d 69 (1990).

" 'The doctrine of respondeat superior focuses on the employee's conduct rather than on the employer's knowledge or approval of the acts. If the employee acted with apparent authority in furtherance of employer business, the employer's consent or ratification of the misconduct is irrelevant . . . even an inno-

cent employer must compensate an injured party.' "
*Belanger* v. *Village Pub I, Inc.*, 26 Conn. App. 509, 520,
603 A.2d 1173 (1992), quoting *Paine Webber Jackson
& Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 646, 579
A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055
(1990).

If the jury found the plaintiffs' evidence credible, it
could reasonably find that, but for his position as an
employee, Walters would not have been on the basket-
ball court, that Walters had been responsible for help-
ing to maintain order on the basketball court, that the
YMCA benefited when Walters played basketball
because it had an employee on the court to help keep
order, that the commission of fouls disrupts a basket-
ball game, and that Walters attacked Glucksman in a
misguided effort to prevent Glucksman from commit-
ting fouls and disrupting the game.

This case is similar to *Pelletier* v. *Bilbiles*, supra, 154
Conn. 544, and *Reilly* v. *DiBianco*, 6 Conn. App. 556,
507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d
193 (1986). In *Pelletier*, an employee of a confectionery
store, who was charged with keeping order in the store,
assaulted a customer who had thrown a wrapper on
the floor. The court, finding that the issue of respon-
deat superior should have reached the jury, wrote, "The
beating of an unruly customer, if the plaintiff can be
so characterized, is an extremely forceful, although mis-
guided, method of discouraging patrons of the Spa,
including the plaintiff, from causing disturbances on
the premises in the future. The fact that the specific
method a servant employs to accomplish his master's
orders is not authorized does not relieve the master
from liability. . . . A master does not escape liability
merely because his servant loses his temper while he
is conducting the master's business." (Citations omit-
ted.) *Pelletier* v. *Bilbiles,* supra, 548. Here, the plain-

tiffs presented sufficient evidence for a reasonable jury to infer that Walters beat Glucksman in a misguided attempt to maintain order on the basketball court.

In *Reilly*, we affirmed the trial court's denial of a motion to render judgment for the defendant notwithstanding the verdict where the plaintiff had been beaten by the defendant's employee after the plaintiff allegedly stole a checkbook from the defendant's service station. We found that it was appropriate for a jury to consider the issue of respondeat superior where "the assault occurred, or at least began, on the premises of the business . . . the employer was present at the time, and . . . the assault was committed in defense of the employer's property." *Reilly* v. *DiBianco*, supra, 6 Conn. App. 573–74. In the present case, Walters was involved in an aggressive basketball game, sponsored by his employer. He would not have been in the game but for his employment with the YMCA. One of the duties of Walters, inferentially, was to help keep order on the basketball court.

The YMCA attempts to distinguish *Pelletier* and *Reilly* by noting that, in those cases, it was clear that the employee was on duty and was arguably acting to further his principal's business. The standard by which we judge whether the issue of respondeat superior should be submitted to a jury, however, does not require the connection to be clear, but rather, only reasonable. There was testimony from an employee of the Stamford YMCA that she always considered herself to be on duty when she was in the facility. There was testimony from the YMCA director that the YMCA professional staff was always considered to be on duty. Further, the professional staff was always required to maintain order in the facility. The only reason Walters was in the YMCA was because of his job, initially as a volunteer and then, at the time of the attack, as a part-time employee. It reasonably can be inferred that Walters had a degree of responsibility as a YMCA

employee not only during scheduled work hours but also when he was playing basketball. It can also be reasonably inferred that the basketball games are one aspect of the YMCA's business, and that that business is furthered when an employee is keeping order on the court.

The YMCA further argues that there is less evidence of respondeat superior here than in *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 537 A.2d 527 (1988), and *Brown* v. *Housing Authority*, 23 Conn. App. 624, 583 A.2d 643, cert. denied, 217 Conn. 808, 585 A.2d 1233 (1990); where we upheld the trial courts' decisions that no other conclusion could be reached rationally except that the doctrine of respondeat superior did not apply.

In *Gutierrez*, we affirmed a summary judgment in favor of the employer, the commissioner of mental retardation, for the consequences of an employee's sexual assault on a retarded client. We held, "it is clear that [the employee] was not furthering the defendant's business interests when he sexually assaulted the plaintiff. He was engaging in criminal conduct which had no connection to the defendant's business of providing supervision and training to mentally retarded persons regarding daily living skills. Since there were no facts before the court from which it could conclude that [the employee] was furthering the defendant's interests, the defendant's nonliability under a respondeat superior theory was properly determined as a matter of law." *Gutierrez* v. *Thorne*, supra, 13 Conn. App. 499. *Gutierrez* is distinguishable from the present case, however, because, in this matter, there was testimony that employees considered themselves to be responsible, as employees, whenever they were within the walls of the YMCA, and further, it can be inferred that the YMCA, which provides activities such as basketball for its members, benefited when employees maintained order in basketball games. In *Gutierrez*, there was no such rea-

sonable connection between the business of the commissioner of mental retardation and the sexual assault of one of its clients.

In *Brown* v. *Housing Authority*, supra, 23 Conn. App. 624, an altercation arose between the plaintiff and the defendant's employee after the plaintiff asked the employee to move his van, which was blocking traffic. When the employee refused to move the van, the plaintiff drove away. The employee then followed the plaintiff down the street, rear-ending his car several times. The plaintiff got out of his vehicle to talk with the employee. The employee grabbed a hammer and struck the plaintiff in the chest.

Under these facts, we found that the employee "was not furthering the defendant's business interests when he assaulted the plaintiff. His intentional, criminal acts were in no way connected to the defendant's business." Id., 628. The employee worked as a maintenance mechanic for the defendant employer. The assault, although it occurred during working hours, could not have arisen from the job responsibilities of the employee. In *Brown*, the employee necessarily abandoned his employer's business to pursue and attack the plaintiff. In the present case, however, a jury could have found that Walter's attack arose out of his responsibilities as an employee of the YMCA. Because this is so, the plaintiffs are entitled to a new trial on the third count and on the fifth count as it relates to the doctrine of respondeat superior.[1]

---

[1] The plaintiffs have not argued that the directed verdict on the count relating to respondeat superior prejudiced the jury's consideration of the remaining counts. Although a trial court may direct a verdict if a jury could not reasonably and rationally reach any other conclusion, the "preferred procedure . . . is to submit the issues to the jury, and then to set aside the verdict." *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 499–500, 656 A.2d 1009 (1995). If the counts submitted to a jury for consideration are factually identical and legally similar, as in this case, a jury may be influenced by the court's direction of a verdict and there is a risk that the

## II

### Negligence

The plaintiffs next ask that the judgment in favor of the YMCA be set aside and the matter be remanded for a new trial as to the YMCA's liability because the trial court improperly (1) permitted the YMCA's witnesses to testify about the level of supervision of adult pickup basketball games at other facilities and (2) charged the jury that it could consider the prevailing practices of supervision of adult pickup basketball games at other facilities when determining whether the YMCA utilized or failed to utilize reasonable care. We disagree with the plaintiffs' claims.

Certain additional facts are relevant to the resolution of this issue. The plaintiffs introduced the testimony of Howard Berg, an administrator at the Stamford Jewish Community Center, who testified about adult pickup basketball games at the center. On direct examination, Berg discussed, inter alia, the nature of the sport, the ways to minimize violence in the sport, the amount of supervision used at the center, the practices of other facilities in regard to supervision and his opinion of whether there were any universal standards for supervision.

The YMCA presented testimony from various witnesses regarding the level of supervision of adult pickup basketball games at other facilities. Among the witnesses were Robert Lapp, the executive director of the Darien YMCA; Dorothy Kyle, the executive director

jury will comingle the legal theories involved in the separate counts and be influenced by the knowledge that the court has decided that as to one count the plaintiff should not prevail. See generally *State* v. *Horne*, 215 Conn. 538, 547, 577 A.2d 694 (1990). In this case it is impossible to know whether the jury was so influenced.

of the Westport YMCA; and Martin Einhorn, the director of health and fitness at the Jewish Community Center in West Hartford.

Lapp was questioned by the YMCA about industry practices concerning the supervision of adult pickup basketball games. He testified about practices that were generally followed in the industry. Then Lapp was asked to compare the practices of the Stamford YMCA to the general industry practices. Lapp testified that the practices of the Stamford YMCA were consistent with the practices of other facilities. Kyle was questioned about the level of supervision at the Westport YMCA.

The plaintiffs objected to the questions posed to Lapp and Kyle but their objections were overruled without comment by the trial court. Prior to the testimony of Einhorn, the plaintiffs raised an oral motion in limine to preclude Einhorn from testifying about the supervision of pickup basketball in his facility on the grounds that those practices were irrelevant to the Stamford YMCA in that there was no link between the facilities and there was no evidence of a common practice or standard on which the witness could base his testimony. The court denied the motion on the ground that Einhorn's testimony could be introduced to rebut Berg's testimony.

The trial court charged the jury that it could consider the practices of the YMCA, as well as of other facilities, when it considered whether the YMCA used reasonable care. The trial court cautioned that whether such practices existed, were followed or were even applicable were matters solely within the jury's discretion.[2] The trial court also charged the jury on the reasonable person standard.

---

[2] Specifically, the trial court stated, "In your consideration of whether the YMCA utilized or failed to utilize reasonable care and supervision or

The plaintiffs contend that it was improper for the trial court to permit Lapp to testify as to whether the Stamford YMCA supervised basketball in accordance with recognized industry practices in light of other testimony from Lapp that the level of supervision varied from facility to facility. The plaintiffs claim that the prejudicial value of this information outweighed any probative value, that there was no foundation laid for the admission of the evidence and that the record disclosed that there was no industry practice or custom with regard to supervision of adult pickup basketball. The plaintiffs also contend that it was improper for the trial court to have permitted Kyle to testify concerning the practices of the Westport YMCA in light of Lapp's testimony that there was no common industry custom or practice. Finally, the plaintiffs argue that the trial court improperly denied the plaintiffs' motion in limine concerning Einhorn's testimony about supervisory practices in his facility because there was no foundation in the record to support testimony about the industry practice of supervision of adult basketball.

The YMCA argues that the contested testimony was admissible as rebuttal evidence and, further, that the trial court had the discretion to allow the YMCA independently to introduce the evidence to establish an industry custom or practice. We agree with the YMCA that it is admissible as rebuttal evidence.

"[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. . . . The purpose of allowing the

management of the basketball game, it is proper for you to consider the prevailing practices of other facilities and the YMCA's own practices. However, whether such practices existed, whether they were followed or whether they were even applicable are matters solely in your sole consideration."

introduction of such evidence is not to give the opposing party a license to introduce unreliable or irrelevant evidence but to allow the opposing party to put the initial offer of evidence into its proper context. . . . Thus, the trial court must consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit [the evidence] . . . to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . Such a decision, of course, rests within the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Somers* v. *LeVasseur*, 230 Conn. 560, 565–66, 645 A.2d 993 (1994).

The plaintiffs here opened the door to the challenged testimony by questioning one of the witnesses, Berg, on the practices of supervision in his facility, practices of other facilities and whether there were universal standards of supervision. Berg supplied an answer from which the jury could infer that the pickup basketball games in his facility were supervised more strictly than those at the Stamford YMCA. In light of this testimony, introduced by the plaintiffs, it was appropriate for the trial court to allow rebuttal testimony about the supervision of pickup basketball games at other facilities.

Further, in response to the plaintiffs' claims concerning Lapp's testimony, we note that although Lapp did testify that supervision varied from facility to facility, he also testified about general industry practices of supervision. Therefore, his testimony concerning whether the supervisory practices of the Stamford YMCA were consistent with general industry practices was not improper.

The plaintiffs also challenge that portion of the trial court's charge to the jury concerning the supervisory practices of the Stamford YMCA and of other facilities. The plaintiffs argue that the charge was not based

on the evidence in the record because both the plaintiffs' and the YMCA's witnesses testified that there was no common practice of supervision among facilities but, rather, that the level of supervision varied from facility to facility.

"A charge . . . is to be read as a whole without the dissection of its parts. It will not be the source of reversible error absent a determination that the probable effect of the charge was to lead the jury to an incorrect verdict. . . . The charge must be examined to determine whether it fairly presents a case to a jury so that no injustice results and is not to be examined with a legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." (Citations omitted; internal quotation marks omitted.) *Gajewski* v. *Pavelo*, 36 Conn. App. 601, 609, 652 A.2d 509, cert. granted, 232 Conn. 915, 654 A.2d 355 (1995). We find that the trial court properly charged the jury on the issue of supervisory practices.

Both parties recognize that evidence of the practices or customs of similar facilities can be admitted at the trial court's discretion when the trier of fact needs to take into account circumstances beyond the scope of common knowledge and experience in order to answer the question of whether reasonable care was exercised. *Woodbury Water Co.* v. *Public Utilities Commission*, 174 Conn. 258, 259, 386 A.2d 232 (1978); *Jacobson Electric Co.* v. *Rome Fastener Corp.*, 156 Conn. 55, 60, 238 A.2d 415 (1968). The plaintiffs do not argue that the procedures associated with supervising pickup basketball games are within the common knowledge and experiences of jurors. Rather, the plaintiffs contend that the testimony presented at trial concerning industry practices indicated that there was no single practice followed in the industry, and, therefore, that the trial court should not have allowed the jury to consider, as the trier of fact, whether certain practices existed.

The trial court, however, did not instruct the jury that there was a single industry practice. Rather, the trial court told the jury that it could consider the "practices of other facilities." There was testimony from the directors of a number of facilities explaining the particular supervisory practices employed at those facilities. The charge simply allowed the jury to consider that testimony when determining whether the Stamford YMCA used reasonable care. This was not improper.

## III

### CHARGE TO THE JURY

Finally, the plaintiffs argue that the trial court improperly refused to charge the jury that the YMCA had established certain safety policies, which were evidence of the standard of care, and, that if the YMCA did not follow those policies, then the jury could properly find that the YMCA breached the standard of care.[3] The plaintiffs contend that there was sufficient

---

[3] The request to charge is as follows: "You have heard testimony in this case from Messrs. Kane and Weinstein that the defendant YMCA had established certain safety guidelines with regard to supervising the gymnasium area during the hours of 11:30 a.m. and 2 p.m. These witnesses testified that it was the policy of the defendant YMCA to have at least one professional staff person in the gymnasium between the hours of 11:30 a.m. and 2 p.m. in order to supervise the activities going on therein and that said person would either be in earshot or be watching the games 90 percent of the time. While this is my recollection of the testimony, you are not bound by my recollection, but rather must rely upon your own recollection of the testimony.

"If you find that the defendant YMCA had established certain safety rules or guidelines or issued orders for the safe conduct of its business, such rules or orders are evidence of the appropriate standard of care as set by one in the business. As you have heard testimony, the business of the defendant YMCA was, among other things, the providing of a gymnasium within which to play basketball.

"If you find that the defendant has not followed its own established safety rules or policies or guidelines which it issued for the safe conduct of its business, then you may properly find that the defendant YMCA breached the standard of care which it owed to the plaintiff Allen Glucksman. And, if you find that the defendant breached the standard of care which it owed

evidence in the record to support such a charge, that it was legally sound, and that they were prejudiced by its omission. We disagree with the plaintiffs' claims.

As a preliminary matter we must discuss the YMCA's claim that the plaintiffs are not entitled to review of the charge because of its failure to comply with Practice Book § 318, which provides in pertinent part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply." "The defendant must provide the trial court with the factual and legal basis for the charge before an appellate court can find error in the court's refusal to give the charge as requested." *State* v. *Robinson*, 14 Conn. App. 40, 45–46, 539 A.2d 606, cert. denied, 488 U.S. 899, 109 S. Ct. 244, 102 L. Ed. 2d 333 (1988).

The plaintiffs admit in their reply brief that they cited no authority in support of their proposed charge. The plaintiffs, however, refer this court to *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 214, 635 A.2d 798 (1994), where the Supreme Court reached the merits of a jury instruction issue even though it appears that the plaintiff did not strictly comply with Practice Book § 318 in the request to charge. In *Konover*, the issue was preserved for appeal "because the trial court ruled on its merits." *Konover Development Corp.* v. *Zeller*, supra, 215.

Here, the plaintiffs raised the issue of the defects in the charge in their motion to set aside the verdict by claiming that the trial court failed "to charge the jury on the defendant's failure to comply with its own stan-

to the plaintiff Allen Glucksman and that this breach of duty was the proximate cause, as I have defined that term for you previously, of the plaintiff Allen Glucksman's injuries, then you must find in favor of the plaintiff Allen Glucksman."

dards, procedures or guidelines, as requested." The court denied the motion, indicating that the basis for the decision "is known to the parties as a result of prior arguments." This is sufficient evidence that the trial court was aware of the language in the proposed charge and the plaintiffs' rationale for including that language in the proposed charge. Therefore, we will review the plaintiffs' claim.

The first part of the plaintiffs' proposed charge is a recitation of facts, as alleged by the plaintiffs, concerning the claimed supervisory policies of the Stamford YMCA. "The court's review of the evidence in its charge to the jury is subject to the overriding consideration that its comments be fair and that they not mislead the jury, so that injustice is not done to either party." *Anderson & McPadden, Inc.* v. *Tunucci*, 167 Conn. 584, 589, 356 A.2d 873 (1975). "[T]he summary of evidence in a court's charge will not meet the ultimate test of fairness if it directs attention to particular features of evidence in such a way as to single them out and give them an undue prominence." Id., 591. The way in which reference to the evidence may be made lies largely within the discretion of the court and the court need not discuss particular items of the testimony because such comment is discretionary. Id., 590.

It was within the discretion of the trial court to include or exclude in its charge the recitation of the evidence as contained in the proposed charge. Since that proposed charge featured a review of only part of the evidence as presented by the plaintiffs concerning the supervisory practices of the Stamford YMCA, we conclude that the trial court did not abuse its discretion by failing to charge in accordance with the plaintiffs' request.

The next part of the proposed charge asks the trial court to charge that the rules or guidelines of the

YMCA are evidence of the standard of care and that, if the YMCA did not follow those rules or guidelines, it breached the standard of care.

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . ." (Internal quotation marks omitted.) *State* v. *Lee*, 32 Conn. App. 84, 104, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994). "When reviewing the court's instruction, our role is to determine whether, taken as a whole, [it] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Beliveau*, 36 Conn. App. 228, 246, 650 A.2d 591 (1994), cert. granted on other grounds, 232 Conn. 910, 654 A.2d 354 (1995). "It is well established precedent that although [a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given . . . [a] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Citations omitted; internal quotation marks omitted.) *State* v. *Cardany*, 35 Conn. App. 728, 738–39, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 823 (1994).

Here, the plaintiffs essentially wanted the trial court to charge that the YMCA had rules relating to supervision and that, if the YMCA violated those rules, it could be considered a breach of the standard of care. Although the plaintiffs claim that the trial court made no reference to the rules of the Stamford YMCA relating to supervision, the trial court did charge the jury that it could consider, when it reached the issue of reasonable care, whether the YMCA had established practices and whether the YMCA violated those practices.

Therefore, the trial court, in the language of the charge to the jury, essentially included the substance of the plaintiffs' proposed charge.

The judgment is reversed in part and the case is remanded for a new trial on the third count and the fifth count as it relates to the issue of respondeat superior.

In this opinion the other judges concurred.