[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
Before the court is the defendant Mariner Health Care's Motion to Strike counts of the plaintiff Stacey Haydu's complaint claiming damages from her employer, Mariner, for the acts of a supervisor in (1) committing an assault and battery against her; (2) intentionally inflicting emotional distress suffered by the plaintiff; and further claiming (3) invasion of privacy by publication of false statements about the plaintiff; (4) violation of an implied covenant of good faith and fair dealing implicit in the contract of employment. Because on a motion like this, the court in deciding it is required to review what might be proved under the complaint in the light most favorable to the nonmoving party, and to deny the motion if facts provable under the complaint could give rise to a legal cause of action, the motion to strike is denied as to counts one and two claiming corporate liability for the assault and battery and intentional infliction of emotional distress, and Count Six claiming violation of an implied covenant of good faith and fair dealing.
The Motion to Strike is granted as to Count IV claiming invasion of privacy. It does not sufficiently or properly set out a separate cause of action.
On September 25, 1995, the plaintiff, Stacey Haydu, filed an eight-count complaint against Robert Meadows (hereinafter Meadows) and his employer, Mariner Health Care of Southern Connecticut (hereinafter Mariner). On August 23, 1996, the plaintiff filed a reviewed seven-count complaint in which she alleges the following. The plaintiff was employed at Mariner, CT Page 2900 where she was "subjected to repeated acts of sexual assault and battery, unwanted sexual advances and hostility." She alleges, inter alia, that her supervisor, Meadows, made lewd remarks, tugged at her pants, massaged her shoulders, made offensive remarks about "women and niggers", grabbed her wrists and shouted obscenities in her face on several occasions. Her complaint also pleads that, in spite of numerous requests, Meadows continued to sexually abuse and assault the plaintiff. Due to extreme emotional distress and humiliation, the plaintiff requested to work part-time rather than full-time. Meadows denied her request and terminated her employment.
Thereafter, the plaintiff filed a complaint with another manager at Mariner in February of 1994 and with the Connecticut commission on Human Rights and Opportunities (hereinafter CHRO) in March of 1994 for sexual harassment. Upon completion of an investigation into her complaint, Mariner concluded that Meadows had engaged in "inappropriate verbal and physical contact." However, Mariner did not terminate Meadows as the plaintiff had requested. On March 25, 1994, Mariner offered to rehire the plaintiff on a part-time basis to work under the supervision of Meadows as well as to award her back pay. Significantly, two other female employees complained about Mr. Meadows' sexual assaults and batteries on them.
In Count I, the plaintiff alleges that Mariner is liable for the assault and battery that Meadows committed. In Count II, the plaintiff alleges that Mariner is liable for the intentional emotional distress inflicted upon the plaintiff. In Count III, the plaintiff alleges that Mariner negligently hired Meadows. In Count IV, the plaintiff alleges that Mariner and Meadows are liable for invasion of privacy by publishing statements that portray the plaintiff in a false light. In Count V, the plaintiff alleges that her termination was wrongful and in violation of an implied employment contract. In Count VI, the plaintiff claims that both defendants violated the covenant of good faith and fair dealing. In Count VIII, the plaintiff alleges the defendants' actions violated the Connecticut Unfair Trade Practices Act (CUTPA).
Mariner filed a motion to strike. The plaintiff opposed it but she withdrew her claims as set forth in Counts V and VII. November 13, 1996, the plaintiff withdrew her claims as set forth in Count III. Accordingly, the court will address the claims in Counts I, II, IV, and VI as they relate to Mariner only. CT Page 2901
By filing the motion, Mariner contests the legal sufficiency of the allegation of the remaining counts of the complaint. "[I]n ruling on a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff." Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073
(1988). For purposes of the motion, the allegations are assumed true. Verdon v. Transamerica Ins. Co., 187 Conn. 363, 365,446 A.2d 3 (1982).
Mariner argues that the court should strike both Counts I and II because Mariner cannot be held liable as a matter of law under the doctrine of respondeat superior for Meadows' intentional torts. Mariner cites, inter alia, Glucksman v. Walters,38 Conn. App. 140, 144, 659 A.2d 1217 (1995) for the proposition that "[a] master is liable only for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business." Here, Mariner contends that Meadows' actions were beyond the scope of his employment and were not in furtherance of Mariner's business.
In opposition, the plaintiff counters that Mariner is liable for Meadows' actions because it ratified and condoned his behavior by (1) continuing to employ Meadows after several complaints by other employees for sexual assault and battery had been filed; (2) permitted Meadows, in his supervisory capacity, to fire her when she complained to him about his behavior; and (3) by continuing to employ Meadows and having him supervise the plaintiff when she was reinstated after Mariner investigated her CHRO complaint and found that Meadows' behavior was inappropriate. The plaintiff cites Glucksman v. Walters, supra,38 Conn. App. 144-45 and Belanger v. Village Pub I, Inc.,26 Conn. App. 509, 520, 603 A.2d 1173 (1992) as authority.
"It is a general rule of substantive law that corporations, like individuals, are liable for their torts. . . . This liability arises apart from, and is distinguishable from, liability under the theory of respondeat superior. . . . [T]he theory of respondeat superior attaches liability to a principal merely because the agent committed a tort while acting within the scope of his employment. It refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment. A principal may be directly liable, CT Page 2902 however, for the acts of its agents that it authorizes or ratifies. In order to find that a corporation has committed an intentional act, a court or jury must find that the corporation committed, directed or ratified the intentional act." (Internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen,232 Conn. 480, 503-504, 656 A.2d 1009 (1995). In the present case the Court finds that the plaintiff has alleged certain facts including Meadows molestation of other female employees who had complained to Mariner, to permit a fact finder to infer that by allowing a person like Meadows to remain as a supervisor of female employees like the plaintiff the defendant corporation enabled, permitted, participated in and thereby committed and/or ratified Meadows actions and behavior while supervising the plaintiff and may thus be corporately liable.
"[I]ntent refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it. . . . A result is intended if the act is done for the purpose of accomplishing such result or with knowledge that to a substantial certainty such a result will ensue. . . . An intended or wilful injury does not necessarily involve the ill will or malevolence shown in express malice, but it is insufficient to constitute such an [intended] injury that the act . . . was the voluntary action of the person involved. . . . Both the action producing the injury and the resulting injury must be intentional. . . . [Its] characteristic element is the design to injury either actually entertained or to be implied from the conduct and circumstances. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. . . . The known danger involved must go from being a foreseeable risk which a reasonable man would avoid and become a substantial certainty. . . . (Citations omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 108-09, 639 A.2d 507 (1994).
"Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. . . . Thus, whether the actor knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury." Id., 111. CT Page 2903
Verdon v. Transamerica Ins. Co., 187 Conn. 363, 365,446 A.2d 3 (1982).
Thus, accepting as true all well pled facts and because an employer may be liable if it knew that the occurrence of an injury was a substantial certainty, this court denies Mariner's motion to strike Counts I and II.
COUNT IV — INVASION OF PRIVACY
In its supporting memorandum of law, Mariner next argues that the court should strike Count IV because the invasion of privacy claim must fail due to the absence of any allegation of publication, which is a necessary element. Mariner relies onGoodrich v. Waterbury Republican-American, Inc., 188 Conn. 107,131, 448 A.2d 1317 (1982) as authority.
In opposition, the plaintiff counters that she has pled sufficient facts to state a cause of action for unreasonable intrusion, one of the four different categories of invasion of privacy. However, she acknowledges that Connecticut's appellate courts have yet to determine what constitutes a cause of action for unreasonable intrusion. Relying on Mastroberti v. Hall,
Superior Court, Judicial District of Litchfield at Litchfield, Docket No. 058336 (February 18, 1993, Pickett, J.,8 Conn. L. Rptr. 740), she defines the action as "an invasion upon a privacy interest that is highly offensive to a reasonable person." She claims that Mariner's and Meadows' conduct towards her was offensive to the reasonable person.
"The existence of a cause of action for invasion of privacy has only recently been officially recognized by the Connecticut Supreme Court. . . . In recognizing this cause of action, the Supreme Court adopted the definition and categories of invasion of privacy as set forth in 3 Restatement (Second), Torts 652A: a) unreasonable intrusion upon the seclusion of another; b) appropriation of the other's name or likeness; c) unreasonable publicity given to the other's private life; and d) publicity that places the other in a false light before the public. In order to establish invasion of privacy by false light, the plaintiff must show a) the false light in which the other was placed would be highly offensive to a reasonable person, and b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which CT Page 2904 the other would be placed. This form of invasion of privacy protects one's interest in not being placed before the public in an objectionable false light or false position, or in other words, otherwise than as he is. The essence of a false light privacy claims is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position. Jonap v. Silver,1 Conn. App. 550, 557-58, 474 A.2d 800 (1984).
In Count IV of her revised complaint, the plaintiff alleges that "[t]he statements, words, and conduct made by the defendants invaded plaintiff's right to privacy by putting her in a false light, resulting in illness and an intrusion on her solitude and well being, invading plaintiff's right to privacy." She did not allege any facts relating to publication. Therefore, the plaintiff has failed to state a cause of action for invasion of privacy by false light. Accordingly, the court grants Mariner's motion to strike Count IV of the plaintiff's revised complaint.
COUNT VI — BREACH OF GOOD FAITH
In its supporting memorandum of law, Mariner next argues that the court should strike Count VI because the plaintiff has failed to demonstrate that there was an "improper reason for her dismissal, the impropriety of which is derived from a violation of some important public policy." It relies on Carbone v.Atlantic Richfield Co., 204 Conn. 460, 470-71, 528 A.2d 1137
(1987) for this proposition. Mariner further argues that if the plaintiff claims that her termination violated public policy by discouraging employment harassment, she still cannot prevail because there exists a statutory remedy to enforce public policies concerning sexual discrimination and employment harassment. Mariner notes that the plaintiff is also pursuing a claim with the CHRO.
In response, the plaintiff contends that she may pursue this claim because the remedies that CHRO affords are insufficient. Specifically, she notes that punitive damages and attorney's fees are otherwise not available. She relies on Richter v. Hoffman,
Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket 0083842 (June 11, 1991, Lewis, J., 6 CSCR 641) (denying defendant's motion for summary judgment because the administrative remedy available to the plaintiff in the matter of CT Page 2905 sexual harassment is inadequate and she, therefore, is not required to exhaust administrative remedies.) The court agrees with the Richter rationale, the administrative agency could not provide punitive damages.
The Supreme Court has stated "that although we endorse the principle of good faith and fair dealing in employment contracts, the purpose of such an implied contract is to fulfill the reasonable expectations of the parties. Where an employment contract is clearly terminable at will, however, a party cannot ordinarily be deemed to lack good faith in exercising this right. Thus, absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing." Carbone v. Atlantic Richfield Co.,
supra, 204 Conn. 470-71. The court went on to say that "[W]e see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy. Magnan Anaconda Industries, Inc.,193 Conn. 558, 572, 479 A.2d 781 (1984).
Here, the plaintiff did allege facts which, if proved, constitute a violation of an important public policy. That policy succinctly stated is that a worker should be free from sexual predation by supervisors in the workplace, and should not be punished by dismissal for reporting this misconduct if and when such a sexual assault occurs. See Gen. Stat. § 53a-73a. The policy itself need not be expressly pled so long as the conduct violative has been alleged.
The Motion to Strike Count VI is denied.
The clerk is directed to enter orders denying Mariner's motion to strike Counts I, II and VI, but granting the motion to strike Count IV of the plaintiff's revised complaint.
FLYNN, J.