[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT (#124 #128)
The defendant Fall River News Company (Fall River)[1] moves for summary judgment on the first, third, six and seventh counts of the amended complaint. For the reasons set forth below, the motion is granted as to the first, sixth and seventh counts, and denied as to the third count.
 Facts
The following facts are relevant to the present motion. On February 11, 2001, the seventy-eight year old plaintiff, Harold J. Shippee, was driving on Route 2 in the town of Preston when his vehicle was rear-ended by the vehicle driven by Christopher B. Caswell. At the time of the accident, Caswell was driving a vehicle owned by Fall River. Fall River admits that Caswell was driving the vehicle within the scope of his employment by Fall River. The plaintiff alleges that after the CT Page 9492 collision, Caswell exited his vehicle, walked up to the plaintiff's vehicle, opened the driver's side door and punched the plaintiff in the face.
In the first, sixth and seventh counts of the amended complaint, the plaintiff seeks to recovery from Fall River as Caswell's employer under the doctrine of respondeat superior. In the first count, the plaintiff alleges that his injuries were caused by Caswell's negligence, both in his operation of Fall River's vehicle and in "carelessly and recklessly [striking] the plaintiff in the face and head." The sixth count is substantially identical to the first count but relates only to Caswell's alleged striking of the plaintiff, omitting the allegations that Caswell was negligent in his driving. The seventh count is similar to the sixth count but alleges that the alleged striking of the plaintiff was "malicious, wilful and wanton" rather than negligent.
In the third count of the amended complaint, the plaintiff seeks to impose direct liability on Fall River for its alleged negligence in hiring, supervising, training, and retaining Caswell, failing to institute a reasonable policy against on-the-job violence, and entrusting Caswell with the use of a vehicle.
Fall River filed a motion for summary judgment on November 23, 2001 and a supplemental motion for summary judgment on March 21, 2002.[2] Each motion is supported by a memorandum of law. Fall River argues that it is entitled to summary judgment on the first count because it is undisputed that the collision between the two vehicles did not cause any injury. As to the third count, Fall River argues that it is entitled to summary judgment because it did not owe a duty to the plaintiff. Fall River further argues that it is entitled to summary judgment on the sixth and seventh counts because Caswell was not acting within the scope of his employment when he struck the plaintiff.
The plaintiff filed an objection to the motion for summary judgment and a supporting memorandum of law on March 11, 2002, and filed an additional memorandum of law on April 1, 2002. Both parties have submitted affidavits and other evidence in support of their respective positions.
 Discussion
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The CT Page 9493 party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]." (Citation omitted; internal quotation marks omitted.) H.O.R.S.E. of Connecticut, Inc. v. Washington,258 Conn. 553, 559-60, 783 A.2d 993 (2001).
Fall River first claims that it is entitled to summary judgment on the first count of the complaint because there is no genuine issue of material fact regarding causation. Specifically, Fall River argues that the plaintiff was not injured as a result of the collision between the two vehicles. "Although the issue of causation generally is a question reserved for the trier of fact . . . the issue becomes one of law when the mind of a fair and reasonable person could reach only one conclusion, and summary judgment may be granted based on a failure to establish causation." (Internal quotation marks omitted.) Abrahams v.Young Rubicam, Inc., 240 Conn. 300, 307, 692 A.2d 709 (1997). The court must therefore determine whether any reasonable person could find, based on the evidence presented by the parties, that the plaintiff was injured as a result of the collision.
Fall River has submitted a certified transcript of the deposition of the plaintiff, in which the plaintiff states that there was no damage to his vehicle and no injury to himself as a result of the very minor collision between the two vehicles. In opposition to the motion for summary judgment, the plaintiff does not argue, and has offered no evidence to demonstrate, that he was injured in the collision. Consequently, no reasonable person could conclude that the collision itself caused any injury, and the defendant has demonstrated no genuine issue of material fact regarding that particular issue.
This conclusion, however, does not fully dispose of the first count. As the plaintiff Points out, the first count is not limited to allegations that the collision alone caused the plaintiff's injuries. The first count, like the sixth and seventh counts, also contains allegations that the plaintiff was injured when Caswell struck him in the head after the collision. The plaintiff makes the same arguments in opposition to summary judgment on the first, sixth and seventh counts. Consequently, summary judgment with regard to count one is therefore proper only if Fall River is also entitled to summary judgment on the sixth and seventh counts.
Fall River claims that it is entitled to summary judgment on the sixth and seventh counts because, as a matter of law, it is not vicariously CT Page 9494 liable for Caswell's battery of the plaintiff. Specifically, Fall River argues that the doctrine of respondeat superior does not apply in this case because there is no genuine issue of material fact that Caswell was not acting within the scope of his employment when he struck the plaintiff.
"Under the doctrine of respondeat superior, [a] master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business. . . . A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment. . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business. . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Internal quotation marks omitted.) Mullen v. Horton, 46 Conn. App. 759, 764, 700 A.2d 1377
(1997).
"When the servant is doing or attempting to do the very thing which he was directed to do, the master is liable, though the servant's method of doing it be wholly unauthorized or forbidden. If the servant's disobedience of instructions will exonerate the master, the proof, easily made, virtually does away with the maxim of respondeat superior. . . . That the servant disobeyed the orders of the master is never a sufficient defense. It must be shown further that he ceased to act for the master and in the course of his employment." (Internal quotation marks omitted.) Id.; see also Pelletier v. Bilbiles, 154 Conn. 544, 227 A.2d 251 (1967) (employee's battery of plaintiff who blew paper onto floor could be found by jury to be misguided attempt to perform job duty of preventing disturbances at store, and thus within the scope of employment);Rappaport v. Rosen Film Delivery System, Inc., 127 Conn. 524, 18 A.2d 362
(1941) (jury could conclude that employee was acting within scope of employment when assaulting plaintiff in effort to get plaintiff off automobile so employee could continue on delivery route); Son v. HartfordIce Cream Co., 102 Conn. 696, 129 A. 778 (1925) (employee acting within scope of employment when kicking and beating plaintiff in attempt to perform job duty of collecting payment for ice cream); Mullen v. Horton, supra, 46 Conn. App. 759 (priest's sexual exploitation of plaintiff occurring during church sanctioned counseling sessions could be found to be misguided attempt at counseling and therefore within scope of employment); Glucksman v. Walters, 38 Conn. App. 140, 659 A.2d 1217, cert. denied, 235 Conn. 914, 665 A.2d 608 (1995) (YMCA employee acting CT Page 9495 within scope of employment when attacking basketball player in misguided attempt to perform job duty of maintaining order on basketball court).
"Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further the master's business. . . . But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law." (Internal quotation marks omitted.) Mullen v. Horton, supra, 46 Conn. App. 764-65. See, e.g., Gutierrez v. Thorne, 13 Conn. App. 493, 537 A.2d 527 (1988) (as a matter of law, employee's sexual assault of mentally retarded client was not within scope of employer's business of providing supervision and training regarding daily living skills).
One such case was presented to the Appellate Court in Brown v. HousingAuthority, 23 Conn. App. 624, 583 A.2d 643 (1990), cert. denied,217 Conn. 808, 585 A.2d 1233 (1991). The facts in Brown are similar to those in the present case: "[T]he plaintiff and Sam Jones, a maintenance mechanic employed by the defendant, were involved in an altercation of Park Street in downtown New Haven. The incident began when the plaintiff asked Jones, who was driving a van owned by the defendant to a job site, to move his vehicle, which was blocking traffic. The two men exchanged words. When Jones refused to move the van, the plaintiff drove around it. Jones followed the plaintiff down Park Street in the van, rear-ending the plaintiff's car several times. The plaintiff stopped his car at the corner of Park Street and Edgewood Avenue and got out to speak with Jones. Jones also exited his vehicle, grabbed a hammer, chased the plaintiff around the car and struck him on the chest with the hammer. . . . The plaintiff brought [an] action under the theory of respondeat superior seeking damages for the assault and battery committed by [Jones]. The trial court . . . granted the defendant's motion for summary judgment, finding no support for the suggestion that Jones was doing anything in furtherance of the defendant's business when he assaulted the plaintiff." Id., 625-26.
The Appellate Court affirmed the judgment of the trial court, stating: "It is clear . . . that Jones was not furthering the defendant's business interests when he assaulted the plaintiff. His intentional, criminal acts were in no way connected to the defendant's business. The mere fact that Jones was driving from one job site to another when the assault took place does not change this analysis. `In the course of his employment' means while engaged in the service of the master, and it is not synonymous with the phrase `during the period covered by his employment.'. . . As there were no facts before the court from which it could conclude that Jones was furthering the defendant's interests, the defendant's nonliability under the theory of respondeat superior was CT Page 9496 properly determined as a matter of law." (Citation omitted; internal quotation marks omitted.) Id., 628.
The present case is controlled by the holding in Brown. There is no evidence suggesting that Caswell, when he struck the plaintiff after the collision, was disobediently or unfaithfully conducting Fall River's business. On the contrary, the court concludes that the Caswell's criminal act of striking the plaintiff, like the acts of the defendant inBrown, constituted an abandonment of his employer's business.[3] There are no facts before this court from which to conclude that Caswell was furthering Fall River's interests when he struck the plaintiff.
The plaintiff nevertheless argues that Caswell was furthering Fall River's interest when he struck the plaintiff because after the collision, the two drivers were required to exchange registration information pursuant to General Statutes § 14-224 (b). This argument is unpersuasive. Even if the court assumes, arguendo, that an employee's act of exchanging this information, would be an activity within the scope of employment, the plaintiff has provided no evidence demonstrating that Caswell intended to, or made any attempt to, exchange information with the plaintiff. Although the plaintiff argues in its memorandum of law that "the parties . . . indeed began to exchange information regarding insurance and identification," the only evidence offered in support of this statement is the deposition in which the plaintiff stated: "I reached over to open my compartment door because I have a package in there with my registration and insurance card and so forth. And as I did, he opened the door; and before I knew it . . . he hit me square right in the face. . . ." The plaintiff's statement that he was attempting to reach for his insurance and registration when Caswell suddenly hit him is insufficient to support an inference that Caswell ever made an attempt to exchange any information. The plaintiff has therefore failed to show any genuine issue of material fact regarding whether Caswell was acting within the scope of employment.
Because there is no evidence that Caswell was attempting to further Fall River's interests when he committed a battery against the plaintiff, Caswell was acting outside of the scope of his employment as a matter of law. As a result, Fall River is not vicariously liable for the act of Caswell, its employee, under the doctrine of respondeat superior. The motion for summary judgment is therefore granted as to the first, sixth and seventh counts of the amended complaint.
Fall River next claims that it is entitled to summary judgment on the third count of the amended complaint. As stated above, the plaintiff seeks in the third count to impose direct liability on Fall River for its alleged negligence in hiring, supervising, training, and retaining CT Page 9497 Caswell, failing to institute a reasonable policy against on-the-job violence, and entrusting Caswell with the use of a vehicle. Fall River argues that it is entitled to judgment as a matter of law because the plaintiff was not a foreseeable victim of any negligence on its part. Fall River further argues that its liability should not extend to every unascertained member of the public who might come into contact with its employees.
"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] has ever been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeale to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised." (Citations omitted; internal quotation marks omitted.)Perodeau v. Hartford, 259 Conn. 729, 754, 791 A.2d 552 (2002). "There is a difference between the existence of a duty and a violation of the duty. The existence of the duty is a question of law whereas whether there was a breach of that duty is a question of fact." Tryon v. NorthBranford, 58 Conn. App. 702, 715, 755 A.2d 317 (2000).
Our Supreme Court has recognized the existence of a cause of action for the negligent hiring or retention of an employee. See Stiebitz v.Mahoney, 144 Conn. 443, 447, 134 A.2d 71 (1957) (recognizing "duty to appoint proper persons to the police force and to remove or suspend officers who might indulge in . . . outrageous acts of force and indecency"). Subsequently, the court clarified that "[t]his common-law tort is not limited to instances of liability of public officials but extends to any situation where a third party is injured by an employer's own negligence in failing to select an employee fit or competent to perform the services of employment." Shore v. Stonington, 187 Conn. 147,155, 444 A.2d 1379 (1982). Thus, a private employer may be held liable to third parties for the negligent hiring, supervision or retention of its employees.
Fall River nevertheless argues that it did not owe the plaintiff a duty because the plaintiff did not have any special relationship with either Fall River or Caswell, but was instead a member of the general public with whom Caswell happened to come into contact. The court disagrees with Fall River's assertion. Because Fall River employed Caswell as a driver, it was reasonably foreseeable that he would come into contact with other drivers. Liability in a motor vehicle context under Connecticut law does not require a special relationship with a plaintiff. For example, the CT Page 9498 tort of negligent entrustment of a motor vehicle is not so limited: "When the evidence proves that the owner of an automobile knows or ought reasonably to know that one to whom he intrusts it is so incompetent to operate it upon the highways that the former ought reasonably to anticipate the likelihood of injury to others by reason of that incompetence, and such incompetence does result in such injury, a basis of recovery by the person injured is established. That recovery rests primarily upon the negligence of the owner in intrusting the automobile to the incompetent driver." Greeley v. Cunningham, 116 Conn. 515, 520,165 A. 678 (1933). By the same reasoning, when the evidence proves that an employer knows or ought reasonably to know that its driver is so prone to bouts of road rage that the employer ought reasonably to anticipate the likelihood of injury to others, and such road rage does result in such injury, the employer should be liable for its own negligence in employing the driver. The court sees no reason to require a special relationship in the case of road rage when none is required in the case of incompetent driving. Moreover, this conclusion is consistent with a previous holding by another judge of this court in a factually indistinguishable case. See Rutter v. Harris, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 503195 (July 16, 1992, Wagner, J.) (7 C.S.C.R. 1051).[4]
Because the court has determined that Fall River owed the plaintiff a duty, whether that duty was breached is a question of fact that cannot be resolved by summary judgment. Accordingly, the motion for summary judgment is denied as to the third count.
 Conclusion
For the reasons set forth above, Fall River's motion for summary judgment is granted as to the first, sixth and seventh counts, and denied as to the third count.
D. Michael Hurley, Judge Trial Referee